327 So.2d 477 (1976)
Jack BOOTHE and Billie G. Boothe
v.
AMERICAN ASSURANCE CO. et al.
No. 10556.
Court of Appeal of Louisiana, First Circuit.
January 12, 1976.
Rehearing Denied March 1, 1976.
Writ Refused April 23, 1976.
*478 Robert J. Vandaworker, Taylor, Porter, Brooks & Phillips, Baton Rouge, for defendants-appellants.
W. Hugh Sibley, Greensburg, for plaintiffs-appellees.
Before LANDRY, COVINGTON and BARNETTE, JJ.
BARNETTE, Judge.
The plaintiffs, Jack Boothe and his wife, Billie G. Boothe, suffered substantial damage to their residence and household furnishing as the result of a flood. They brought this suit for damages against Bob Wickes, an insurance agent and his errors and omissions liability insurer, American Assurance Company, for damages for the alleged failure of the agent, Wickes, to obtain or notify them of his failure to obtain for them flood insurance for which an annual premium was paid in advance. Made defendant also was Aetna Casualty and Surety Company (cited as Aetna Life & Casualty Insurance Company) to whom the defendant, Wickes, made application for flood insurance on behalf of the plaintiffs.
The application form signed by the agent, Wickes, and mailed to Aetna, copy of which was filed in evidence, is dated May 9, 1973 and indicates flood insurance coverage from May 24, 1973 to May 24, 1974. A premium payment of $30 was made by plaintiffs on the day of application, May 9, 1973. On September 3, 1973, plaintiffs residence and household goods *479 were substantially damaged by a flood. The plaintiffs have alleged that they were not informed by either Wickes or Aetna that the application was not accepted and that they were not insured, until after claim was made following the casualty.
Judgment was rendered in favor of the plaintiff in the trial court against Bob Wickes and American Assurance Company in solido in the principal sum of $6,346.50. Their demands against Aetna were rejected. The plaintiffs did not appeal the dismissal of their suit against Aetna and that portion of the judgment is final. The defendants, Wickes and American Assurance Company, appealed suspensively.
There is no serious dispute of the facts. Jack Boothe and his wife, Billie G. Boothe, owned and occupied a small residence in Livingston Parish located very near Blood River and more specifically very near a canal extending from the river to provide a boat slip and access by boat to the river. Mr. Boothe is a merchant seaman and is away from home long periods of time. Mrs. Boothe has his power-of-attorney and transacts business for the community in his absence.
The defendant, Bob Wickes, a licensed insurance broker is an agent for the State Farm Insurance group and conducts his business as Bob Wickes Agency for State Farm. He represents no other companies but is free to place insurance with other companies if it cannot be handled by State Farm or when, as in this case, the coverage is obtainable only from a governmental agency, such as the National Flood Insurance Program. Mr. and Mrs. Boothe had previously done business with the Wickes Agency for automobile liability insurance.
On May 9, 1973, Mrs. Boothe applied to Mr. Wickes for flood damage insurance and said to him, allegedly, that she had heard or had information that Livingston Parish had been approved for flood insurance. Mr. Wickes had the necessary forms for making application for flood insurance with "INSURANCE COMPANIES MEMBERS OF NATIONAL FLOOD INSURERS ASSOCIATION (IN COOPERATION WITH THE U.S. GOVERNMENT)." The form used also contained the further identification:
"REGULAR FLOOD INSURANCE PROGRAMDWELLING BUILDING AND CONTENTSDEDUCTIBLE COVERAGE APPLICATION AND DECLARATIONS FORM (For Use Only With the Flood Insurance Policy)." He used one of these forms and indicated coverage of $5,000 on the dwelling and $5,000 on the contents. The deductible amount was $200. The form, signed by him, provided "Policy Term 1 Year, from 5-24-73 to 5-24-74." A premium of $30 was indicated, and that amount paid by Mrs. Boothe.
The Aetna Casualty and Surety Company was the designated company to "service" and "process" applications for National Flood Insurance in Louisiana, a program under the administration of Housing and Urban Development. The application prepared for Mrs. Boothe, and signed by Mr. Wickes, was mailed on the same day (May 9, 1973) addressed to Aetna Casualty and Surety Company in New Orleans. This was the first application for flood insurance that Mr. Wickes had handled. He did not know if flood insurance was available, but according to his testimony agreed to submit the application.
Mr. Wickes called another agent (as he remembered) to determine the premium, which he found to be $30. Mrs. Boothe gave her check payable to him for that amount, which in due time was cleared and returned cancelled in Mrs. Boothe's bank statement. Mr. Wickes made out his check for $20 which he placed in an envelope with the application addressed to Aetna and requested Mrs. Boothe (as an accommodation to him and to insure earlier posting) to drop it in the mail box near his office. This she testified she did immediately upon leaving his office. A photocopy of *480 the completed and signed application form was given to Mrs. Boothe and was filed in evidence. The application form contains the following statement:
"Insurance is provided only (1) against the peril of flood as defined in the policy to which this form is attached, (2) with respect to those items specifically described herein and for which a specific amount of insurance is shown below, and (3) for the policy term specified below; and, unless otherwise provided, all conditions and provisions of this form and of the policy to which it is attached shall apply separately to each item covered. * * * [Name and address of insured and name and address of the agent and blank for policy number indicating it as not a renewal] Policy Term 1 Year, from 5-24-73 to 5-24-74"
Mrs. Boothe's testimony was in substance that Mr. Wickes did not specifically tell her she was insured or that she was not, but she assumed from his acceptance of the premium and the terms of the application form given her that she was covered for the term indicated. Mr. Wickes was not positive that he told Mrs. Boothe that she would not be covered until the application was accepted. He testified:
"To the best of my knowledge, Mrs. Boothe came in and she said she didn't know whether she could be covered under this floodhowever this programflood insuranceNational Flood Insurance Program. I said, O.K., I will submit an application but at that time I believe I told her to look at this program that as far as I was concerned I just don't know that much about the thing, the instructions. So if you are eligible, fine, I filled out the application and I filled it out, gave her the application [to be mailed] * * *."
Apparently Mr. Wickes thought the plaintiffs were covered by flood insurance. This is clearly implied by the following letter:
 "6 September 1973
"Aetna Life & Casualty
P. O. Box 61003
New Orleans, La. 70161
Dear Sir,
On 5/9/73 I sent in an application for
flood insurance for Mrs. Billie G.
Boothe, P. O. Box 236, Springfield, La.
70462. The policy period was 5/24/73
to 5/24/74.
Mrs. Boothe has now had a loss. In the
kit that was furnished me I cannot find
any claim forms. Would you please
send me 6 or 8 forms. Also, I cannot
find her policy number. Would you also
please let me know what it is.
Thank you.
 Sincerely,
 [signed] Bob Wickes"
Any impression Mr. Wickes might have had to the contrary and any understanding which Mrs. Boothe had on May 9, to which they both gave parol testimony will not be considered in contradiction of or to vary the terms of the written application form. Civil Code Article 2276. The instrument itself is the best evidence of its contents and meaning. It is the province of the court and not that of the litigants to interpret that meaning when the issue arises.
Our examination of the application form, copy of which was given to the plaintiffs and filed in evidence, convinces us that any reasonable person who had paid the specified premium would assume that the insurance coverage was effective from May 24, 1973 to May 24, 1974.
Upon receipt of the September 6, 1973 letter from Mr. Wickes, Mr. Paul J. Dusang, claims representative for Aetna testified that he searched his company's records and could not find that the application was ever received and processed. Mr. *481 Wickes testified that his check to Aetna mailed with the application had never cleared the bank. No explanation of these circumstances was given by any witness.
Mr. Wickes tendered his check for $30 to plaintiffs on December 7, 1973 for reimbursement of the premium paid. They refused to accept the check. There is no denial that the plaintiffs were not informed by anyone until after the casualty that the insurance was not available and that they were not covered.
Counsel for appellants relies primarily on the argument that the loss sustained by the plaintiffs did not result from Mr. Wickes' failure to timely notify them of his inability to procure the insurance for the reason that it was impossible for such insurance to have been obtained from any source. This fact was established by the testimony of Mr. Dusang. Such insurance can only be obtained through the National Flood Insurance Program and then only in areas approved for such coverage. Livingston Parish had never been approved for such insurance. On this premise counsel for appellants argues that the agent cannot be held liable for not doing that which was impossible to do, citing Julienne v. Touriac, 13 La.Ann. 599 (1858). That was a case involving failure to perform a contractual obligation which became impossible by the passage of an act by the Legislature prohibiting the doing of that which had been contracted to be done.
The principle of law enunciated in that case is perfectly sound but does not apply in this case. It was not possible for Wickes to obtain from any source the flood insurance applied for, but this did not relieve him of the obligation to his client to pursue the application with diligence and to timely inform his client that the insurance was not obtainable. When, after a reasonable time and no reply was received from Aetna, Mr. Wickes was less than diligent in not pursuing the application further. Had he done so he would have known that the coverage could not be obtained, and Mrs. Boothe could then have been notified. Obtaining flood insurance from some other source was not the only option left to plaintiffs had they been timely notified of noncoverage.
Counsel for appellants counters this argument with the further argument that plaintiffs had owned the property since 1969 and had taken no steps to protect it from flooding, such as by raising its foundation; nor had they made any attempt to sell it or take any other measures which they now suggest as options. This argument is without merit. We will not speculate what measures the plaintiffs might have taken or not have taken if they had been informed that they could not get flood insurance. It certainly was within the realm of possibility that any one of several alternatives could have been employed. If nothing more, they could have returned to their former use of the property as a week-end vacation cottage and moved their major furnishings to another location and thus reduced the extent of loss.
Mrs. Boothe thought flood insurance was obtainable when she made application to Mr. Wickes. His actions upon receipt of her application completely justify her assumption that she and her husband were insured against flood damage in the amount stated and for the term indicated. Mr. Wickes also believed that the coverage had been obtained as reflected by his letter to Aetna informing Aetna of the casualty claim. His failure to follow up the application with diligence and promptly notify his client of their non-coverage, renders him liable for damages.
The applicable jurisprudence is summed up well in Karam v. St. Paul Fire & Marine Insurance Company, 281 So.2d 728 (La.1973). The Supreme Court there said:
"An insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the *482 insurance requested and to notify the client promptly if he has failed to obtain the requested insurance. The client may recover from the agent the loss he sustains as a result of the agent's failure to procure the desired coverage if the actions of the agent warranted an assumption by the client that he was properly insured in the amount of the desired coverage. C.C. 3002 and 3003; Kieran v. Commercial Union Insurance Company of New York, 271 So.2d 889 (La.App. 4th Cir. 1973); Hight v. Stewart, 265 So.2d 640 (La.App.2d Cir. 1972); Bordelon v. Herculean Risks, Inc., 241 So.2d 766 (La.App. 3d Cir. 1970); Shrv Teletype Coin Exchange, Inc. v. Commercial Union Insurance Company of New York, 191 So.2d 208 (La.App. 2d Cir. 1966); Arceneaux v. Bellard, 149 So.2d 444 (La.App. 3d Cir. 1963); Brown v. Stephens Buick Company, 139 So.2d 579 (La.App. 4th Cir. 1962)."
See also Ballon v. Smith, 299 So.2d 501 (La.App. 4th Cir. 1974) and Riley v. Carver General Insurance Agency, Inc., 279 So.2d 698 (La.App. 4th Cir. 1973), writ refused, 282 So.2d 523 (La.1973).
The quantum of damage is not mentioned in the briefs before us, but on oral argument counsel for appellants made a point of the alleged insufficiency of proof given by the plaintiffs in support of their allegations of loss. There is no testimony in the record before us on this issue except that of the plaintiffs and one witness called in their behalf. They testified and filed in evidence an estimate of repair from a contractor in the amount of $4,400. They gave their testimony of the value of the items of household goods destroyed and the estimated cost of replacement. One witness in their behalf, Byron H. Wild, corroborated their description of the damage.
In the absence of contradictory testimony on this issue by the defendants, we find no manifest error in the trial judge's acceptance of the testimony of the plaintiff's witnesses.
We do not know, and it is not necessary for us to decide if or why Aetna did not receive the application form, but in any event, the defendant, Wickes, was negligent in not inquiring why no response from Aetna had been received. He had more than three months in which to make an inquiry or in some manner follow up the application and to notify the plaintiffs of his inability to procure the insurance. He and his errors and omissions insurer are therefore liable in solido for the loss sustained as a result of that failure.
There was no privity of contract between the plaintiffs and the defendant, Aetna. If there was a breach of duty on Aetna's part in not notifying Mr. Wickes of its inability to procure the insurance applied for, that is a matter between Mr. Wickes and Aetna.
For the foregoing reasons the judgment appealed is affirmed at appellants' cost.
Affirmed.