Richard HAEUBER, Plaintiff,

v.

CAN–DO, INC., II, et al., Defendants.

PROPRIETORS' INSURANCE COMPANY, Defendant-Third Party Plaintiff-Appellant,

v.

William F. NOBILE, et al., Third Party Defendants-Appellees.

No. 80–3115.

United States Court of Appeals, Fifth Circuit.*
Unit A

Jan. 25, 1982.

Rehearing Denied Feb. 19, 1982.

Benjamin W. Yancey, David B. Lawton, New Orleans, La., for Proprietors' Ins. Co.

Leach, Paysse & Baldwin, Michael A. Britt, New Orleans, La., for William F. Nobile.

Before BROWN, WISDOM and RANDALL, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

The present appeal arises out of a lawsuit brought by personal injury claimant Richard Haeuber, a seaman and member of the crew of the M/V ESTELLE VIC, against his employer, who owned the vessel, and several other defendants no longer parties on this appeal. Because the vessel was operating in violation of the requirements of its Coast Guard certificate at the time of

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452–October 14, 1980.

the accident, contrary to a warranty in the policy,[1] Proprietors Insurance Company (Proprietors), a third-party defendant, denied coverage to the owner of the vessel. The personal injury claim was settled by stipulation among the parties, and the issues remaining for trial under the stipulation were (i) whether Proprietors or the vessel owner's broker was liable to the vessel owner, and (ii) whether the vessel owner's broker had a claim against Proprietors' broker. The District Court held Proprietors liable on the policy and dismissed the third-party claim against Proprietor's broker. We reverse, and remand with respect to the third-party claim brought by the vessel owner's broker.

### Parties to the Dispute

The central parties to this appeal are (i) Can-Do, Inc., II (Can-Do), the owner and operator of the M/V ESTELLE VIC, Haeuber's employer, and the party to whom the insurance policy was issued; (ii) Financial Guardian General Agency, Inc. (Financial), the Louisiana broker acting on behalf of Can-Do to insure the vessel; (iii) Beacon Insurances International (Beacon), the broker acting as intermediary between Financial and Proprietors; and (iv) Proprietors, the insurance company that issued the policy (through its general agency and marine underwriting arm, Unimar, not a party to this lawsuit). A marine protection and indemnity policy was issued by Proprietors to Can-Do, and included a warranty (see note 1) specifically requiring compliance with the vessel's Coast Guard Certificate. When the personal injury claim was brought by Haeuber against Can-Do, Proprietors denied coverage because the vessel was operating in violation of the Certificate and the policy warranty. Can-Do subsequently brought a cross-claim against Proprietors alleging failure to provide coverage. Proprietors therefore filed a third-party complaint against Financial, and Can-Do brought a

cross-claim against Financial as well. Following a stipulation agreement, Proprietors settled the claim by Haeuber, released Can-Do, and pursued the claim against Financial. Financial filed a third-party claim against Beacon, holding Beacon responsible for the misunderstanding.

### The Great Misunderstanding

In December, 1976, Can-Do asked Financial to "renew" its policy on the M/V ESTELLE VIC. Can-Do specifically requested coverage on the vessel for operation with a crew of only two. Significantly, the U. S. Coast Guard's manning and licensing requirements called for a minimum two-man crew *plus* a licensed captain.

Financial then contacted Beacon, seeking a premium quotation for a crew of two on the vessel. At that time, Financial requested that certain waivers and other unspecified provisions should be similar to Proprietors' Policy PIC 17–748, a policy, on another vessel, that did not contain a warranty that Coast Guard requirements would be followed. On December 10, 1976, Beacon sent Financial a quotation for coverage on the vessel with a crew of two. The rates quoted were approved by Unimar, Proprietors' underwriting arm.

After receiving the premium quotation, Can-Do authorized Beacon to order a policy that would include some provisions from the expiring policy on the vessel, which contained a Coast Guard warranty, and others from Proprietors' policy 17–748, which did not contain such a warranty. The references to these two policies were, in retrospect, confusing to the parties involved. This confusion is more clearly illustrated as our chronology continues.

After receiving the order from Financial, Beacon sent a message to Proprietors advising the underwriter that a policy should be issued on December 30, 1976, covering the vessel with a crew of two. As pointed out

---

1. The warranty read as follows:

WARRANTED: COAST GUARD REGULATIONS COMPLIED WITH AND NAVIGATION LIMITS, NUMBER AND CLASSIFICATION OF CREW AND OPERATING RE-

QUIREMENT SHALL BE AS SET FORTH IN THE U. S. COAST GUARD CERTIFICATE ISSUED TO THE VESSEL(S) INSURED HEREUNDER.

in the District Court's opinion, Beacon omitted any reference in its order to Proprietors' policy 17–748 (which did not contain a Coast Guard warranty), but simply asked for a "renewal" of the policy then in effect (which did contain a Coast Guard warranty). Proprietors accepted the risk, and Beacon sent Financial the policy numbers on December 27, 1976. Financial then contacted Can-Do to advise that coverage had been placed on the vessel effective December 30, 1976. Unknown to Can-Do, the policy that had been prepared, based on the order submitted by Beacon, included the Coast Guard warranty as well as the condition that additional crewmen other than two were to be reported to Proprietors.

On January 5, 1977, before receiving the actual policy from Beacon, Financial drafted a "Certificate of Insurance" and forwarded it to Can-Do. This certificate contained the same Coast Guard warranty as the Proprietors' policy.

Because Can-Do did not want to warrant compliance with the Coast Guard's manning and licensing requirements, it sent a letter to Financial asking for deletion of the warranty. On January 17, 1977, Financial mailed an "endorsement" that represented to Can-Do that the warranty had been removed.

Next, Financial finally received the policy issued by Proprietors, and Financial notified Beacon that the Coast Guard warranty should be deleted and that another insured party should be added to the policy. Beacon telexed its reply, agreeing to the additional assured but stating "advise reason to delete CG warranty." The policy itself was placed in Financial's file and never delivered to Can-Do. No further communications took place between Financial and Beacon, nor did Beacon pass the deletion request to Proprietors.

The accident occurred ten months later, with Can-Do believing that its insurance policy provided coverage for the vessel even when operated in non-compliance with its Coast Guard Certificate. In contrast, Proprietors assumed that the policy containing the warranty had been delivered to, and accepted by, Can-Do.

Proprietors' unwillingness to pay for the personal injury claim was based upon Can-Do's operation of the vessel in violation of the warranty. When Financial was brought into the suit, by Proprietors' third-party complaint as well as Can-Do's cross-claim, it pointed out, in a third-party complaint against Beacon, that Beacon provided a premium quotation for operation of a vessel with a crew of two, thus it now argues that it reasonably believed the Coast Guard warranty would be routinely deleted to conform to the premium agreement. Moreover, the argument continues, Beacon did not forward the deletion request to Proprietors for its consideration, thus Financial holds Beacon responsible for any misunderstanding regarding Proprietors' coverage.

The District Court held that Financial used reasonable diligence in attempting to procure insurance for Can-Do, and that the actual presence of the warranty in the policy was caused by Beacon's failures both to order the correct coverage and to notify Proprietors to delete the warranty. Because judgment was entered for Financial and against Proprietors, Financial's third-party demand against Beacon was rendered moot.

### District Court Rationale

The District Court, in a carefully written opinion, recognized that Financial had no authority to bind Beacon to the coverage of the risk, and that Beacon likewise could not bind Proprietors. In attempting to discover how the misunderstanding arose in this controversy, the court found that Financial's initial request to Beacon for coverage on the ESTELLE VIC made a reference to Proprietors' older policy (on another vessel), without a warranty, which suggested that the Coast Guard warranty was not to be included in Can-Do's new policy. This, the District Court found, was consistent with Financial's request for coverage for a crew of two. Beacon did not transmit this specific order to Proprietors, and thus the policy prepared included a Coast Guard warranty.

At this point, it seems plausible for Financial to argue on appeal that it did not

expect the policy as issued to include a Coast Guard warranty. However, as the District Court also found, Financial's certificate of insurance, sent to Can-Do, purported to represent the coverage it had procured from Proprietors and *included* a Coast Guard warranty. When Can-Do notified Financial to delete the warranty, an opportunity arose to clear up this misunderstanding. Financial notified Beacon that the warranty should be deleted, but, the District Court found, Beacon "did not pass the deletion request on to [Proprietors] for its consideration, as was its usual practice when policy modifications were requested, or advise [Financial] that his request would be granted or denied." Beacon's request, sent to Financial, "to advise reason to delete C.G. warranty" was viewed by the court as a failure to follow up on Financial's deletion request. On this basis, the District Court found that the warranty remained in the policy "not because of a lack of reasonable diligence amounting to negligence on [Financial's] part, but because Beacon did not order the policy [Financial] requested, and because Beacon failed to consult [Proprietors] when notified . . . of its error." We do not disagree with the suggestion that Beacon may be at fault, but we must disagree with the conclusion that Financial exercised reasonable diligence and that Proprietors is liable on the claim.

### The Stipulation: The Origin of this Appeal

The stipulation entered into between Richard Haeuber and Proprietors, Finan-

cial, Beacon, Can-Do, and several other parties not relevant in the present dispute, recited that judgment in the amount of $95,000 (with 7% interest) would be entered in Haeuber's favor when the District Court in the present action enters its final judgment in the dispute between Proprietors, Financial, and Beacon. It was agreed that Can-Do would satisfy the judgment, but in fact Proprietors, without conceding liability, guaranteed to Can-Do the ultimate reimbursement of the $95,000 judgment.[2] Moreover, the judgment has already been satisfied by a loan receipt agreement whereby Proprietors transferred the funds to Can-Do. The stipulation provided that, in the event an appeal is taken, the consent judgment against Proprietors would not be entered until a final decision regarding the liabilities in the dispute between Proprietors, Financial, and Beacon. Next, the stipulation stated that Can-Do releases Proprietors, Financial, and Beacon from any further claims of any sort other than those arising out of the stipulation document.[3] But this means that Can-Do had, and was reserving, the right to assert claims against Proprietors. Finally, Financial agreed that it would not urge in defense of any claim asserted against it by Proprietors the failure of Proprietors to defend against the claim of Can-Do under the policy.

Because of Proprietors' payment of both the $95,000 settlement and the $9,636.80 paid in connection with Haeuber's claim

---

**2.** Article III. of the stipulation states:

Proprietors . . . does not concede liability to Can-Do . . . under its policy of insurance . . . but, solely for the purpose of settling the claims made by plaintiff and Can-Do . . . in this suit, and compromising and composing all its disputes with it, and as an inducement for [Can-Do's] participating in the present stipulation, Proprietors hereby guarantees to [Can-Do] the ultimate reimbursement of the judgment set forth in Article I hereof [$95,-000]. Proprietors agrees that this guarantee may be made the subject of a consent judgment against it, Proprietors, for the amount paid to plaintiff, Richard Haeuber, . . . but this consent judgment against Proprietors shall not be entered until a final decision by the court or by the appellate court, . . . fixing

ultimate liability in the dispute as between Proprietors, Financial, and Beacon. . . . [Can-Do] agrees to render all reasonable assistance, at Proprietors' expense, to effect recovery from any other party who may have been cast as between Proprietors, Financial, and Beacon. . . .

**3.** Article VI. of the stipulation states:

In consideration of the various undertakings in this agreement, [Can-Do] hereby waives, and finally releases Proprietors, Financial, and Beacon from any further claims of any sort whatsoever, other than those specifically arising under this document, connected with the injury to Richard Haeuber which is the subject of this litigation.

immediately after the accident, Proprietors is subrogated to whatever claims Can-Do might assert against Financial and Beacon. Although Can-Do has not yet suffered a financial loss, because Proprietors already paid the $9,636 and has guaranteed payment on the $95,000, Can-Do is exposed to a claim that it has an implied duty to repay Proprietors if payment was not received by the terms of the policy. With respect to the payment of the $9,636, Can-Do brought a cross-claim against Financial for its negligence in failing to procure proper insurance. Proprietors certainly succeeds to Can-Do's rights of recovery under this claim. Moreover, under the very terms of the stipulation, whereby Proprietors guarantees to ultimately pay the $95,000, that guarantee is conditioned upon a final decision by the courts fixing ultimate liability as between Proprietors, Financial and Beacon. This has not occurred and cannot until the final decision has been reached as between these parties. Thus Can-Do has not been completely released from all liability. The rights of recovery and liability of Can-Do have been preserved by the stipulation, and these are the rights and liabilities to which Proprietors succeeds.

### Financial's Diligence as a Broker

■ The primary issue on this appeal is whether Financial was reasonably diligent as a broker in its failed attempt to obtain the coverage which Can-Do requested. We think not. It was Financial that, it might be said, held all the cards throughout the misunderstanding leading up to Proprietors' denial of coverage. Can-Do specifically requested that Financial obtain coverage for the ESTELLE VIC in December of 1976, and within days Financial teletyped Beacon seeking premium quotations. Rates were quoted in a two-man crew, and after Can-Do's approval, Financial teletyped a message to Beacon to bind the coverage at the rates quoted. We do not find it necessary or relevant to determine whether, at this point, Financial impliedly requested a policy

without a Coast Guard warranty. Nor is it significant whether Beacon understood that such a warranty was to be included in the policy. Regardless of any misunderstandings in these preliminary negotiations, Beacon telexed Proprietors' agent to bind the coverage which included a Coast Guard warranty. Beacon notified Financial that the risk was bound, and Financial issued a certificate confirming that coverage had been accepted by Proprietors. This certificate, as stated above, included a Coast Guard warranty, although Financial now claims that the inclusion was a mistake.

When Can-Do requested that Financial have the warranty deleted, Financial boldly issued an endorsement to Can-Do that represented, albeit incorrectly, that the warranty had been removed from the policy. When the policy was received by Financial containing the warranty, it notified Beacon by letter that the warranty should be deleted, but Beacon replied "advise reason to delete C.G. warranty," and this request was never answered, nor was it communicated to Can-Do.

Financial urges that although it retained the policy in its files, it assumed, presumably without an examination of the policy, that the request for deletion of the warranty had been submitted to Proprietors and was acceptable. Financial did not request that a new policy or endorsement be issued, and it continued to collect the premium from Can-Do and forward it to Beacon. Throughout the ten months prior to the accident, Financial knew that Can-Do wanted the warranty removed, that the written policy contained the warranty, that Beacon inquired as to why the warranty should be removed, and that no change in the policy had been issued by Proprietors by indorsement or otherwise.[4]

On the basis of the above facts, the District Court concluded that Proprietors, either in its own right or as subrogee of Can-Do, did not establish Financial's negli-

---

4. Financial claims that it assumed the warranty had been deleted by Proprietors, brushing aside the inquiry by Beacon (as to the reason for deletion of warranty) as mere curiosity and not part of the negotiation.

gence in failing to use reasonable diligence. We disagree, and find that Financial did not act as a reasonably diligent broker for Can-Do.

In *Karam v. St. Paul Fire & Marine Insurance Co.*, 281 So.2d 728 (La.1973), the Louisiana Supreme Court held that:

> An insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the insurance requested and to notify the client promptly if he has failed to obtain the requested insurance. The client may recover from the agent the loss he sustains as a result of the agent's failure to procure the desired coverage if the actions of the agent warranted an assumption by the client that he was properly insured in the amount of the desired coverage. (citations omitted)

*Id.* at 730–31. In *Boothe v. American Assurance Co.*, 327 So.2d 477 (La.App.) *writ denied*, 330 So.2d 315 (1976), the court held that:

> Where an insurance agent was negligent in failing to inquire why no response had been received in connection with an application for a policy for over three months, the agent was liable for losses sustained by the party seeking to be insured.

*Id.* at 482.

■ Financial was the only party during the ten months prior to the accident that knew that the coverage it had obtained for Can-Do was materially different from the coverage requested by or represented to Can-Do. Contrary to the District Court's finding of due diligence, Financial's duties were not exhausted by merely requesting that the warranty be deleted. The duty of a broker is to obtain, not merely request, the coverage needed, and if it is unavailable, to notify the client. It bears reiteration that we are not concerned on this appeal with whatever negligence, if any, can be established on the part of Beacon, because this issue was never reached by the District Court. We are not blind to the entire spectrum of parties involved in these misunderstandings, but we must on this appeal isolate Financial's actions and consider whether the lack of due diligence of a broker was established by Proprietors. Financial's responsibility was heightened by its holding the policy in its files, thus making it impossible for Can-Do to realize that its request resulted in no change in the insurance policy. Significantly, when Financial made its request to have the warranty deleted, it also requested that an additional insured be named. Beacon's response affirmatively accepted the additional insured, but questioned the deletion of the warranty. Not only did Financial fail to notify Can-Do of the problem that obviously had arisen, but it issued an "endorsement" reassuring Can-Do that its request had been carried out.

### Conclusion

The above facts are sufficient to establish that Financial, under Louisiana law, did not exercise the due diligence of a professional broker. We need not reach the issues of alleged concealment of material facts by Financial or the alleged violation of a statutory duty to deliver a policy to the insured. We find that Financial's actions were in no way consistent with the diligence and professionality of a reasonable broker.[5]

5. In making this decision, we have considered Financial's great emphasis on the negotiations leading up to the issuance of the policy, particularly the fact that the premium rate was based upon a crew of two operating the ESTELLE VIC. Briefly, they argue that because the Coast Guard requires that a crew of at least three must operate such a vessel, the Coast Guard warranty was inconsistent with the parties' original insurance agreement. Moreover, the initial request for coverage contained provisions from an earlier policy issued by Proprie- tors on another vessel that did not contain a warranty. This controversy, it is submitted, should be considered in light of these "total circumstances" surrounding the request for insurance protection. We find that the negotiations and premium quotations regarding the two-man vessel are neither sufficient to modify the express warranty that was never deleted nor sufficient to give notice to Proprietors, or its agent, Beacon, that the vessels would be operated in violation of Coast Guard regulations. Significantly, although an insurance pol-

In view of the above findings, we (i) reverse the holding that Proprietors failed to establish breach of duty on the part of Financial, (ii) reverse the dismissal of the third-party claim by Financial against Beacon as moot, and (iii) remand for a determination of liability as between Financial and Beacon.

REVERSED AND REMANDED.

icy is subject to reformation on the basis of mutual error or mistake, this theory was never pleaded and the facts reveal that Proprietors never intended to issue a policy without the warranty. *See Stacy v. Petty,* 362 So.2d 810, 814–15 (La.App.1978).