**Sarah P. WOOD, d/b/a Creekwood Marina, Plaintiff–Appellant,**

v.

**NEWMAN, HAYES & DIXON INSURANCE AGENCY and Gregory L. Slusher, Defendants–Appellees.**

Supreme Court of Tennessee, at Nashville.

Aug. 21, 1995.

John R. Bradley, Anthony D. Miller and Shelton Hatcher, Hendersonville, for appellant.

Barry L. Howard, Michael H. Johnson, Gracey, Ruth, Howard, Tate & Sowell, Nashville, for appellees.

## OPINION

DROWOTA, Justice.

In this insurance case, the plaintiff-insured, Sarah Wood (d/b/a Creekwood Marina), appeals from the Court of Appeals' reversal of a judgment entered in her favor by the trial court after a bench trial. The issue presented for our review is one of first impression in Tennessee: whether an insurance agent may be held liable for failing to inform the insured that a replacement policy does not provide the same coverage as the previous policy, even though insurance for the specific loss that the insured suffered was not in fact obtainable at the time the policy was replaced due to market conditions. For the reasons set forth below, we answer this question in the affirmative, and therefore reverse the judgment of the Court of Appeals and reinstate the judgment of the trial court.

### FACTS AND PROCEDURAL HISTORY

The facts of this case are virtually undisputed. The plaintiff Sarah Wood and her husband Jack Wood operate Creekwood Marina, which has docks or slips for approximately one hundred boats. The defendant Gregory Slusher was the plaintiff's insurance agent; and Slusher procured "all-risk" insurance, which included coverage for damage from ice and snow, for the marina from 1979 to 1985.

In 1985, as the policy's November 1 expiration date approached, the insurance carrier notified both the Woods and Slusher that the all-risk policy would not be renewed. Thereafter, Slusher contacted more than two dozen insurance companies in an attempt to procure a like replacement policy. However, the only comparable insurance he could locate was a policy covering certain "named perils"; and ice and snow were not included in the group of insurable perils. Thus, on October 31, 1985, Slusher wrote the Woods a letter, explaining that the new policy would cover "fire, extended coverage and vandalism" and would exclude theft from coverage. Slusher did not mention in the letter that the new policy would not cover ice and snow. However, he advised the Woods to contact him if they had questions about the scope of the policy's coverage. Approximately two weeks later Slusher forwarded the new policy to the Woods with an accompanying letter, but this letter also did not address the issue of ice and snow coverage.

On February 14, 1986, an ice and snow storm caused eighteen covered wooden docks

at Creekwood Marina to collapse. Ms. Wood then filed a claim with Slusher, who forwarded it to the insurance carrier. The carrier denied the claim because ice and snow was not included among the named perils in the policy. Ms. Wood subsequently brought an action against Slusher and his employer, Newman, Hayes & Dixon Insurance Agency, alleging that: (1) Slusher was negligent in failing to procure a policy covering ice and snow damage; and (2) Slusher was negligent in failing to inform the Woods that the replacement policy did not cover ice and snow damage. The defendants answered the complaint, alleging that: (1) they were not negligent; and (2) if their actions in fact constituted negligence, that negligence was not the proximate cause of the plaintiff's injuries.

During the bench trial in this case, Slusher testified that in the fall of 1985 the market for marina insurance was very "tight," and that even though he had contacted over 24 insurance carriers in the attempt to locate an all-risk policy, he was unable to do so. Slusher also testified that he had informed Sarah Wood during the fall of 1985 about the condition of the market; but admitted that he had not told her at that time that there would be a problem obtaining ice and snow coverage, and he admitted that he had not told the Woods that the replacement policy did not cover ice and snow damage. Finally, Slusher stated that the Woods had never specifically requested ice and snow coverage; and he testified that such coverage was simply not available during the latter months of 1985.

Slusher's testimony concerning the market conditions was supported by the testimony of Paul Smith, the plaintiff's insurance expert. Smith stated that Ms. Wood had asked him to locate an all-risks policy instead of a named perils policy in late 1985, but that he had been unable to locate such a policy. Smith also testified that when he was able to find ice and snow coverage sometime in 1986 or 1987, the premium was so high that the Woods were not willing to pay for it. However, Smith also testified that an insurance agent has the duty to notify the client if the coverage in a renewal or replacement policy is less than the previous coverage.

Jack Wood testified that at the time of the loss in February 1986, he believed that the replacement policy covered ice and snow damage; and he stated further that if he had known that the new policy did not provide this coverage, he would have tried to find it elsewhere because ice and snow presents such a great risk to marinas. He also testified that once the snow began to fall, he could do nothing to prevent the loss.

Finally, Sarah Wood testified that she also believed that the new policy covered ice and snow damage after receiving the policy and the accompanying letter; and that, based on the letter, she did not believe that there was any need to carefully review the policy. Ms. Wood admitted that she had asked Paul Smith to obtain an all-risk policy for her in the fall of 1985, and that he had been unsuccessful in the endeavor. Finally, Ms. Wood stated that regardless of what type of insurance they were able to obtain, the Woods were still going to operate the marina; and she admitted that if the ice and snow coverage had been prohibitively expensive in the fall of 1985, they would not have purchased the coverage.

After the bench trial, the trial court entered a judgment in the plaintiff's favor in the amount of $35,763. The court, in its Findings of Fact and Conclusions of Law, determined that Slusher owed Sarah Wood a duty to fully disclose any material changes in the coverage; and it found that Slusher had breached this duty by failing to inform her of the specific perils covered and excluded by the replacement policy. The court further determined that this breach caused Ms. Wood to suffer a loss, and that Slusher's negligence was the proximate cause of this loss. Thus, the court entered judgment in Ms. Wood's favor, although it also determined that she was fifteen percent at fault for failing to read the new policy and adjusted the damages award accordingly.

The defendants appealed from this judgment to the Court of Appeals, which reversed the judgment of the trial court. In its analysis, the Court of Appeals agreed that Slusher owed Ms. Wood a duty to inform her of any material changes in coverage; and it agreed that Slusher had breached this duty. How-

ever, the court nevertheless reversed the judgment because it concluded that Slusher's actions were not the cause in fact of Wood's damages. The court reached this conclusion by reasoning as follows:

> The seminal question in the case at bar is whether defendant's negligence was the cause in fact of plaintiff's injury; that is, whether plaintiff's losses would not have occurred 'but for' for the negligence of the defendant. At trial, both Gregory Slusher and Paul Smith testified that all-risk insurance was simply unavailable during the fall of 1985, and for some time thereafter, given the market conditions. Even if Slusher had made Mrs. Wood fully aware of the lack of snow and ice coverage in the new policy, she would not have been able to do anything to thwart her losses, apart from shutting down the marina, which she was unwilling to do. The snow and ice storm occurred in February of 1986, a time when the insurance market happened to be 'tight' in the area of coverage for marinas. Although Slusher negligently breached his duty to inform, he cannot be held responsible for Mrs. Wood's losses because his negligence was not the cause in fact of the damage sustained.[1]

We granted the plaintiff's application for permission to appeal to consider this issue of first impression.

### ANALYSIS

In any negligence action the plaintiff must establish, by a preponderance of the evidence, the following elements in order to prevail:

> (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below that standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal cause.

*Bradshaw v. Daniel,* 854 S.W.2d 865, 869 (Tenn.1993) (citations omitted).

■ It is also well established that an insurance agent employed to maintain insurance coverage for a client may be held liable on a negligence theory if the agent fails to use reasonable care and diligence in continuing the insurance, either by obtaining a renewal or replacement policy or by properly maintaining an existing policy. *Ezell v. Associates Capital Corp.,* 518 S.W.2d 232, 234 (Tenn.1974); *see also Massengale v. Hicks,* 639 S.W.2d 659, 660 (Tenn.App.1982). An important corollary of this rule is that the agent is charged with an affirmative duty to notify the client if he is unable to continue the previous coverage, and the failure of the agent to so notify the client will subject him to liability.

■ As noted by the Court of Appeals, the precise issue in this case is whether the defendant's undisputed failure to notify the plaintiff that the replacement policy did not cover ice and snow damage was the cause in fact of the plaintiff's loss. To rephrase the issue in the classic language of causation in fact, would the plaintiff's loss have not occurred "but for" the defendant's failure to inform her that the replacement policy did not provide the same coverage as the previous policy?

The plaintiff argues that the Court of Appeals' analysis is flawed because it attributes too much weight to the fact that the ice and snow coverage was unavailable, or effectively so, during the fall of 1985. While the plaintiff does not dispute the fact of unavailability, she asserts that it should not control the outcome of this case because the defendant's failure to inform her of the absence of ice and snow coverage in the replacement policy denied her the opportunity to explore other methods of protecting her property. Therefore, according to the plaintiff, the unavailability of the ice and snow coverage should not excuse, on causation in fact grounds, the failure of the defendant to notify her of the change in coverage. The plaintiff cites *Bell v. O'Leary,* 744 F.2d 1370 (8th Cir.1984) and *Boothe v. American Assurance Co.,* 327 So.2d 477 (La.App.1976) in support of this argument.

---

1. The Court of Appeals addressed only the failure to notify claim because it determined that the negligent procurement claim was not supported by the evidence. We agree with this determination.

The defendant responds that the availability of coverage should be the determinative inquiry in cases such as this; and he cites three decisions in support of this assertion: *Bias v. Advantage Int'l Inc.*, 905 F.2d 1558 (D.C.Cir.1990), *Cronin v. Washington Nat'l Ins. Co.*, 980 F.2d 663 (11th Cir.1993) (applying Florida law), and *D.R. Mead & Co. v. Cheshire of Florida, Inc.*, 489 So.2d 830 (Fla. App.1986). Alternatively, Slusher argues that Ms. Wood's argument is flawed because the evidence presented at trial showed that the Woods would not have done anything differently had they known that the replacement policy did not cover ice and snow damage. Since the Woods would not have explored any other options in any case, Slusher argues, his failure to notify them of the reduction in coverage cannot be the cause in fact of their loss.

In assessing the merits of the parties' positions, we note initially that the authority cited by the defendants in support of their first argument—that insurance must be available from some source before the agent may be held liable for failing to inform the client of the reduced coverage—is not determinative. The two cases applying Florida law, *D.R. Mead* and *Cronin*, held that insurance must be available before the agent can be held liable on a theory of negligent procurement; however, this requirement was not explicitly applied to a failure to notify claim, and in *Cronin* the agent was actually held liable for failing to warn the client that her policy was about to expire and for failing to assist her in obtaining a renewal policy.

On the other hand, *Bias* appears, at first blush, to provide support for the defendants' argument. In that case, the agent promised to procure a life insurance policy on the decedent but did not do so. The decedent's parents brought an action against the agent, alleging that they had not independently sought a policy because of their belief that agent had already obtained one. The appellate court concluded that because of Bias' drug use, a life insurance policy was not in fact available, and therefore the agent did not cause the loss by failing to procure the policy.

Although *Bias* is more persuasive than the other authority cited by the defendants, it is distinguishable from the present situation in that it concerned life insurance rather than property or casualty insurance. As the plaintiff points out, life insurance is the only option open to a person seeking to insure—in the broad sense of the word—against the loss of life, whereas a person seeking to insure against the loss of property may utilize a number of different options, and is not confined to actually purchasing insurance. Therefore, *Bias* is only of limited applicability to this case.

In contrast to the relatively inapplicable authority cited by the defendant, the *Boothe* and *Bell* decisions fully support the plaintiff's argument. In *Boothe* the plaintiffs, Louisiana residents, asked the defendant agent to procure flood insurance for them. The only insurance available for the area was offered by the United States government through the National Flood Insurance Program (NFIP), and the specific parish in which the plaintiffs resided had not been approved for the program. Despite this, the agent submitted the plaintiffs' application, represented to the plaintiffs that they were covered, and then failed to take any further action on the application. After the plaintiffs suffered a flood loss and learned that they were not insured, they brought a negligence action against the agent and prevailed in the trial court.

On appeal the defendant argued that because that flood insurance was unavailable except through the NFIP, and because the plaintiffs were not eligible for that program, his failure to inform the plaintiffs that they were uninsured was not the cause of their injury. The Louisiana Court of Appeals rejected this argument, reasoning that:

It was not possible for [the agent] to obtain from any source the flood insurance applied for, but this did not relieve him of the obligation to pursue the application with diligence and to timely inform his client that the insurance was unobtainable. When, after a reasonable time and no reply was received from [the carrier], [the agent] was less than diligent in not pursuing the application further. Had he done

so he would have known that the coverage could not be obtained, and Mrs. Boothe could then have been notified. Obtaining flood insurance from some other source was not the only option left to the plaintiffs had they been timely notified of noncoverage.

Counsel for the appellants counters this argument with the further argument that plaintiffs had owned the property since 1969 and had taken no steps to protect it from flooding, such as by raising its foundation; nor had they made any attempt to sell it or take any other measures which they now suggest as options. This argument is without merit. We will not speculate what measures the plaintiffs might have taken or might *not* have taken if they had been informed that they could not get flood insurance. It certainly was within the realm of possibility that any one of several alternatives could have been employed ...

*Boothe,* 327 So.2d at 481 (emphasis in original).

A very similar situation presented itself in *Bell.* In that case the plaintiffs, who lived in an unincorporated area in Lincoln County, Missouri, requested the defendant agent to obtain flood insurance for them. As in *Boothe,* the only flood insurance available in this area was offered through the NFIP. The agent submitted applications for the insurance, and the policies were issued. Subsequently, however, the Department of Housing and Urban Development (HUD) took over the administration of the NFIP and became the sole insurer of all outstanding flood policies in the area; and one of the express provisions of the HUD coverage was that it did not apply to unincorporated areas. The agent did not discover this information and therefore did not notify the plaintiffs of this change. After the plaintiffs suffered flood losses and their claims were denied, they brought a negligence action against the agent.

As in *Boothe,* the agent argued that because the insurance was unavailable, his actions were not the proximate cause of the plaintiffs' losses. The United States Court of Appeals for the Eighth Circuit, relying upon *Boothe,* rejected this argument:

At the threshold we note that the unavailability of flood insurance from any source did not relieve [the agent] of the obligation to the plaintiffs to pursue their applications, with diligence, and to inform his clients that the insurance was unobtainable. Further, [the agent's] failure to discover crucial information lulled the plaintiffs into believing that no further actions were necessary. In other words, by failing to discover the facts which would have prevented the mistaken belief by all that the plaintiffs were insured, [the agent] foreclosed the opportunity to consider other options that might have been available to the plaintiffs. 'Obtaining flood insurance from some other source was not the only option left to the plaintiffs had they been timely notified of noncoverage.' This is true particularly when one considers that the plaintiffs were trying to obtain insurance for mobile homes, property which could have been moved in order to meet eligibility requirements. However, whether the plaintiffs would have pursued other options is not the point. As noted in *Boothe,* 'we must not speculate what measures the plaintiffs might have taken or not taken if they had been informed that they could not get flood insurance.' As a result, the plaintiffs suffered monetary losses that they otherwise might not have incurred.

*Bell,* 744 F.2d at 1373–1374 (citations omitted).

■ We agree with the reasoning of these decisions. Despite the defendants' argument that the Woods would not have done anything differently had they been informed that the replacement policy did not cover ice and snow damage, we, like the *Boothe* and *Bell* courts, refuse to speculate as to what they would or could have done had they been notified. The exercise is not only futile, given the range of human ingenuity, it is irrelevant: the fact remains that the agent's failure to inform the Woods of the change in coverage completely denied them any opportunity to explore other methods of protecting their property. Therefore, we do not agree

with the Court of Appeals' conclusion the agent's actions were not the cause in fact of the plaintiff's loss, and hereby reverse the judgment of the Court of Appeals and reinstate the judgment of the trial court, which we affirm in its entirety.

ANDERSON, C.J., and REID, BIRCH and WHITE, JJ., concur.