IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 20, 2006 Session

**ROSALIND PRUITT, INDIVIDUALLY AND AS MOTHER AND NEXT OF KIN OF DOMONIQUE PRUITT, A MINOR**
**v.**
**CITY OF MEMPHIS**

**An Appeal from the Circuit Court for Shelby County**
**No. CT-002855-04     Kay S. Robilio, Judge**

**No. W2005-02796-COA-R3-CV - Filed January 18, 2007**

This is a negligence case brought under the Tennessee Governmental Tort Liability Act. The plaintiff's minor daughter slipped and fell at a public swimming facility and broke her arm. The plaintiff filed suit against the defendant swimming facility, alleging that her minor daughter slipped on a wet concrete floor in the dressing room area and that the swimming facility created and maintained a dangerous and defective condition that caused her daughter's injury. At trial, the defendant swimming facility moved for an involuntary dismissal at the close of the plaintiff's proof. The trial court granted the motion and dismissed the case. The plaintiff now appeals, arguing that the trial court applied an adult standard of care to her minor daughter, and that she established a prima facie case of negligence against the defendant. We affirm, finding that the plaintiff failed to make out a prima facie case of negligence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

David A. McLaughlin and Peter B. Gee, Jr., Memphis, Tennessee, for Appellants Rosalind Pruitt, Individually and as Mother and Next of Kin of Domonique Pruitt, a minor.

J. Michael Fletcher, Memphis, Tennessee, for Appellee City of Memphis.

**OPINION**

Defendant/Appellee City of Memphis ("City" or "Defendant"), owns, operates, and maintains the Lester Community Center, which includes a swimming pool open to the public. On June 15, 2003, Dominique Pruitt, then age 10, entered the facility to swim. While in the facility, Dominique Pruitt fell and injured her right arm, fracturing it in two places.

On May 17, 2004, Plaintiff/Appellant Rosalind Pruitt, individually and as mother and next of kin of Domonique Pruitt ("Plaintiff" or "Pruitt"), filed a lawsuit against the City pursuant to the Tennessee Governmental Tort Liability Act, alleging negligence.[1] In her complaint, Pruitt asserted that Dominique entered the dressing room of the Lester Community Center and, while in the changing area, slipped and fell on a wet, slippery, and slick concrete floor, fracturing her right arm in two places. Pruitt's complaint alleged that there were no "anti-slip measures" in place to protect the public in general or Domonique in particular. She sought compensatory damages equal to the maximum amount allowed under Tennessee Code Annotated § 29-20-403 or $250,000, whichever is greater, as well as medical expenses.

The City filed its answer on June 25, 2004. In response to the complaint, the City denied negligence and asserted that Pruitt failed to state a claim upon which relief could be granted. The City also argued that Pruitt was guilty of comparative fault by failing to properly supervise her minor daughter, and that the Public Duty Doctrine barred any recovery.

A bench trial was held on October 31, 2005. At the outset, counsel for the Plaintiff told the trial court that the evidence would show that, while Domonique was in the hallway on the way to the dressing room, she slipped and fell on "polished" and wet concrete.[2] Counsel argued that the evidence would show that the slippery and wet concrete floor constituted a dangerous and defective condition created and maintained by the City.

As their first witness, Plaintiff called Domonique Pruitt. Domonique testified that on January 15, 2003, she arrived at the Lester Community Center around 2:00 p.m. to swim. She said that when

---

[1]Plaintiff pled section 29-20-205 of the Tennessee Code Annotated as the basis of her claim. This section provides that "[i]mmunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment," subject to numerous exceptions. T.C.A. § 29-20-205 (2000). At trial and on this appeal, however, Plaintiff argued that the injury was caused by a dangerous and defective condition of which the City of Memphis had notice. Section 29-20-204 of the Tennessee Code Annotated governs the removal of governmental immunity for injuries caused by a dangerous or defective condition. Specifically, this section states:

(a) Immunity from suit of a governmental entity is removed for any injury caused by the dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement owned and controlled by such governmental entity.

(b) Immunity is not removed for latent defective conditions, nor shall this section apply unless constructive and/or actual notice to the governmental entity of such condition be alleged and proved in addition to the procedural notice required by § 29-20-302.

T.C.A. § 29-20-204 (2000).

[2]From the record, we gather that upon entering the Lester Community Center, there is a long hallway leading directly to the swimming pool. On the left or right side of that hallway is an entryway area that, upon entering it, veers into the girls' dressing room. The record is not clear as to which side of the hallway the girls' dressing room is located. Either way, it appears that entry to the dressing room would require a turn from the hallway to the dressing room.

she entered the facility, she walked down a hallway on her way to change clothes. In the hallway, she stated, she slipped once, but "caught [her]self," and then after a few more steps, slipped again and fell to the floor. According to Domonique, there was nothing on the floor where she slipped; she described the concrete floor as "rough" and wet. When she got up, she said, the back of her shorts was wet and her right arm was hurting. She testified that she then told an employee of her fall. The employee informed her that her arm was broken and called her mother. After Domonique's mother arrived at the community center, the two of them were taken to LeBonheur Children's Hospital by ambulance, where her right arm was put in a cast. On cross-examination, Domonique acknowledged that when she arrived at the community center, she was late meeting friends and did not pay attention to where she stepped.

Next, Rosalind Pruitt, Dominique's mother, took the stand. When she arrived at the community center, she said, her daughter was sitting in a chair at the entrance of the facility holding her right arm. According to Ms. Pruitt, as she bent down to examine her daughter's arm, she peered into the hallway of the facility "trying to imagine what happened" and saw a wet concrete floor lit only by the sunlight coming from the front door. She maintained that she did not see a mat of any kind on the concrete floor of the hallway. Ms. Pruitt also testified about her visit to the community center three or four days after the alleged incident, in which she was accompanied by an investigator who took photographs of the facility. Ms. Pruitt looked at the photographs taken by the investigator. She said that they depicted the "dressing area," but that none showed the area where Domonique fell. Ms. Pruitt's testimony suggested that the fall occurred in the entryway area of the dressing room.[3]

Plaintiff then called, as an adverse witness, Daniel Young, the manager of the Lester Community Center and a certified lifeguard. Young testified that, on the day of the incident, Domonique Pruitt came out of the dressing room of the facility with a broken right arm. Young said that he was in charge of placing rubber mats on the concrete floors of the community center. He testified about where the floor mats were typically placed. According to Young, one mat was typically placed in the long hallway leading to the swimming pool, another mat at the entrance of the dressing room, and two or three mats on the floor inside the dressing room. Young asserted that there was a floor mat in the hallway on the day of the incident. He conceded, however, that the floor mats are not physically connected to each other. He allowed that, in the dressing room area, the mats do not cover the entire floor, and that there is a gap between the floor mat lining the hallway to the swimming pool and the floor mat in the entryway area leading into the dressing room, which exposes the concrete floor.

Finally, Plaintiff presented the testimony of Gloria Collins, also an employee of the Lester Community Center. On the day of the incident, Collins was working in the "cage," an area where children deposit their clothes after changing. Collins testified that she saw Domonique walk into the facility and go around the corner to the "women's side." Shortly thereafter, she stated, Domonique

---

[3]The photographs taken by Ms. Pruitt's investigator, which were submitted as part of the record, appear to depict this entryway area in addition to the inside of the dressing room area. As noted above, however, Ms. Pruitt testified that the photographs do not depict the area where Domonique fell.

returned and informed her that "she fell in the dressing room." Collins also testified about the location of the rubber mats. She said that, on the day of the incident, the rubber mat designated for the hallway was in place. She could not recall whether there was a mat placed in the entryway of the dressing room. Collins also conceded that if there was a floor mat in the entryway area leading into the dressing room on the day of the incident, it would not have been connected to the mat in the hallway.

At the conclusion of the Plaintiff's proof, the City moved for an involuntary dismissal under Rule 41.02(2) of the Tennessee Rules of Civil Procedure. The trial court granted the motion, ruling orally as follows:

> The Court does not find plaintiff's argument persuasive. Domonique Jones Pruitt testified herself that the concrete was rough and wet. All of us have been around swimming pools all of our lives and that's what you find is rough and wet concrete and that's what she testified to. And that she was not looking where she was going.
>
> And I think that Domonique—I think we very surely will never know exactly what happened, but the plaintiff has not tipped the scales in plaintiff's favor. We find that she, in fact, testified.
>
> Also, we have to remember—I didn't want to cause Domonique any embarrassment, but Domonique is now 12 years old and in the fourth grade. So her perception—she may have to meet some perceptual challenges herself, and I simply don't see that plaintiff's carried the burden of proof.
>
> That's what you have at swimming pool[s] is rough, wet concrete and you do have to pay attention to where you're going and you do have to look where you're going. And if there are mats around—and it's difficult to know where the mats were, but it seems that the way the evidence is, that there were some mats around, suppose that she was in dressing room, I mean, she has an obligation to stand where she is not going to fall over.
>
> Now, we don't know where she fell. When she stepped out, and at one time she was in the dressing area—in fact, she said she was down in the hall. She cannot remember herself. Again, Domonique is 12 years old and in the fourth grade, so I do not find that plaintiffs carried the burden of proof.

Subsequently, on November 7, 2005, the trial court entered a written order dismissing the Plaintiff's claim and granting the City's Rule 41.02(2) motion. From this order, the Plaintiff now appeals.

On appeal, Plaintiff raises the following two issues: (1) whether the trial court erred in granting the City's motion for involuntary dismissal pursuant to Tennessee Rule of Civil Procedure 41.02(2); and (2) whether the City rebutted the legal presumption that her minor daughter, Domonique Pruitt, is not capable of negligence.

4

A Rule 41.02(2) motion for involuntary dismissal challenges the sufficiency of the plaintiff's proof. ***Burton v. Warren Farmers Co-op***, 129 S.W.3d 513, 520 (Tenn. Ct. App. 2002). In considering such a motion, a trial court "need only impartially weigh and evaluate the plaintiff's evidence just as it would after all the parties had concluded their cases and may dismiss the plaintiff's claims if the plaintiff has failed to make out a prima facie case by a preponderance of the evidence." ***Id.*** (citing ***Thompson v. Adcox***, 63 S.W.3d 783, 791 (Tenn. Ct. App. 2001)). On appeal, we review the trial court's decision to grant a Rule 41.02(2) motion in accordance with Tennessee Rule of Appellate Procedure 13(d) "because the trial court has used the same reasoning to dispose of the motion that it would have used to make a final decision at the close of all the evidence." ***Id.*** at 521 (citing ***College Grove Water Util. Dist. v. Bellenfant***, 670 S.W.2d 229, 231 (Tenn. Ct. App. 1984); ***Nold v. Selmer Bank & Trust Co.***, 558 S.W.2d 442, 444 (Tenn. Ct. App. 1977)). Thus, our standard of review is *de novo* upon the record, according a presumption of correctness to the trial court's findings of fact. "We will affirm the trial court's decision unless the evidence preponderates against the trial court's factual determinations or unless the trial court has committed an error of law affecting the outcome of the case." ***Id.*** (citing ***Hass v. Knighton***, 676 S.W.2d 554, 555 (Tenn. 1984); ***Smith v. Inman Realty Co.***, 846 S.W.2d 819, 821 (Tenn. Ct. App. 1992)). Finally, we note that the trial court's assessment of the witnesses' testimony is given great weight on appeal, because the trial court is in a better position to evaluate their credibility. ***Id.*** (citing ***Thompson v. Adcox***, 63 S.W.3d 783, 787 (Tenn. Ct. App. 2001)); ***see also Whitaker v. Whitaker***, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997).

On appeal, the Plaintiff argues first that she established that the City created and maintained a dangerous and defective condition on the premises of the Lester Community Center, namely, a wet concrete floor exposed between a gap in the rubber floor mat in the hallway and the area leading into the dressing room. She also contends that she proved that the City had actual notice of this dangerous condition. Plaintiff also asserts that she established that Domonique Pruitt, a ten-year-old minor, slipped and fell in the area leading into the dressing room, fracturing her right arm in two places. Accordingly, Plaintiff asserts, the evidence preponderates against the trial court's finding that she failed to establish a prima facie case of negligence against the City.

Pruitt's negligence action was brought pursuant to the Tennessee Governmental Tort Liability Act ("GTLA"). In pertinent part, the GTLA removes governmental immunity "for any injury caused by the dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement owned and controlled by [a] governmental entity." T.C.A. § 29-20-204(a) (2000). In accordance with common-law principles of premises liability, section 29-20-204 requires the plaintiff to prove "constructive and/or actual notice to the governmental entity of such condition." T.C.A. § 29-20-204(b) (2000); ***Collins v. Metro. Gov't of Nashville***, No. 01A01-9607-CV-00339, 1997 WL 187312, at *3 (Tenn. Ct. App. Apr. 18, 1997). Further, the GTLA also removes governmental immunity for "injury proximately caused by a negligent act or omission of any employee within the scope of his employment," subject to various exceptions not pertinent to this appeal. T.C.A. § 29-20-205 (2000). As noted above, despite pleading section 29-20-205 of the Tennessee Code Annotated in her complaint, at trial it appears that Plaintiff traveled under section

5

29-20-204. Under either section, however, the analysis for purposes of this appeal would be the same.

To establish a prima facie case of negligence, the Plaintiff must prove the following five elements: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995) (citing *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993); *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993); *McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn. 1991)). This case turns on the issue of causation.

As stated by the Tennessee Supreme Court, a "defendant's conduct is the cause in fact of the plaintiff's injury if, as a factual matter, it directly contributed to the plaintiff's injury." *Hale v. Ostrow*, 166 S.W.3d 713, 718 (Tenn. 2005). Thus, the initial question is whether the plaintiff's injury would not have occurred "but for" the defendant's breach of duty. *Id.* (citing *Wood v. Newman, Hayes & Dixon Ins. Agency*, 905 S.W.2d 559, 562 (Tenn. 1995)). If the plaintiff establishes "but for" causation, then the question becomes whether the defendant's breach of duty proximately caused the plaintiff's injury.

> Proximate cause puts a limit on the causal chain, such that, even though the plaintiff's injury would not have happened but for the defendants' breach, defendants will not be held liable for injuries that were not substantially caused by their conduct or were not reasonably foreseeable results of their conduct.

*Id.* at 719; *see also Lowery v. Franks*, No. 02A01-9612-CV-00304, 1997 WL 566114, at *5 (Tenn. Ct. App. Sept. 10, 1997).

At trial, the Plaintiff's proof regarding the location of the fall can only be characterized as inconsistent. The complaint alleged that Domonique fell in the changing area of the dressing room. Domonique testified that she fell in the hallway on her way to the changing area. Domonique's mother seemed to assert in her testimony that her daughter fell in the entryway area of the dressing room. Still later, the testimony of the two employees of the Lester Community Center who worked on the day of the incident tended to support the allegation in the complaint that Domonique fell inside the dressing room.

Furthermore, there was also conflicting testimony regarding the location of the rubber floor mats. Domonique testified that there was nothing on the floor where she fell in the hallway. Ms. Pruitt testified that she did not see a floor mat when she peered into the hallway from the entrance of the community center as she tended to her injured daughter. Daniel Young, however, testified that floor mats are typically placed in the hallway leading to the swimming pool, in the entryway area of the dressing room, and inside the dressing room. Young further testified that, on the day of the incident, there was a floor mat in the hallway. Gloria Collins recalled that there was a floor mat in the hallway on the day of the incident, but could not remember whether there was a floor mat at the entrance of the dressing room. The Plaintiff's proof also included photographs of the "dressing area"

6

of the Lester Community Center, but Ms. Pruitt said that the photographs were not of the place where Domonique fell.

After hearing all of this proof, the trial court explicitly found that it could not determine where in the facility Domonique actually fell. The trial court further found that while the evidence established that there were "some mats around," their location could not be determined. After thoroughly reviewing the record, we cannot say that the evidence preponderates against these findings.

Assuming *arguendo* that the Plaintiff proved that there was an exposed, wet concrete floor between the gaps in the rubber floor mats, the Plaintiff did not establish by a preponderance of the evidence that this allegedly dangerous condition caused Domonique to fall and injure her right arm. Based on the record before us, it is unclear where Domonique actually fell and whether or not a rubber floor mat was located in that area.

Without establishing where the injury occurred and whether there was a floor mat in that location, the Plaintiff failed to prove that the City's conduct or the alleged dangerous condition was a cause in fact of Domonique's injury, much less a proximate or legal cause. ***Cook By and Through Uithoven v. Spinnaker's of Rivergate, Inc.***, 878 S.W.2d 934, 939 (Tenn. 1994) ("The finding of proximate cause must be based on proof of causation in fact."). Instead, Plaintiff merely established that Domonique fell while inside the Lester Community Center and was injured. As often noted, "negligence is not presumed from the mere fact of an accident or injury." ***Lowery v. Franks***, No. 02A01-9612-CV-00304, 1997 WL 566114, at *4 (Tenn. Ct. App. Sept. 10, 1997). Because the Plaintiff did not establish causation, we cannot conclude that the trial court erred in granting the City's motion for involuntary dismissal. This holding pretermits any other issues raised on appeal.

The decision of the trial court is affirmed. Costs of this appeal are to be taxed to Plaintiff/Appellant Rosalind Pruitt, and her surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE