Kenneth D. LAUB, Plaintiff,

v.

John L. FAESSEL and WorldCo,
L.L.C., Defendants.

No. 97 Civ. 1851(RO).

United States District Court,
S.D. New York.

Nov. 21, 1997.

---

Dreier & Baritz, L.L.P., New York City,
Mark S. Dreier, for Plaintiff.

Fulbright & Jaworski, L.L.P., New York
City, Glen Banks, Douglas Gray, for Defendant.

## OPINION AND ORDER

OWEN, District Judge.

The complaint alleges that, in 1993, defendant John L. Faessel introduced himself to plaintiff Kenneth D. Laub as a "duly registered investment advisor, specializing in advising high net worth individuals" regarding the stock market. In particular, Faessel represented that he had "extensive training and expertise as a technical analyst and chartist" and that he was regularly and successfully providing advice to a broad client base. Unbeknownst to Laub, however, none of this was true—Faessel's only formal training is as a dentist. Relying on these misrepresentations, Laub retained Faessel as an "investment advisor" and paid him $18,000 between January 1, 1995 and June 30, 1995. In July 1995, Faessel falsely told Laub that he had become a consultant to defendant WorldCo and encouraged Laub to continue to use his services, now with the purported benefits of WorldCo's resources.[1] In reliance on these false statements and Faessel's continuing misrepresentations as to his qualifications and expertise, Laub paid $17,500 for and relied upon Faessel's advice in purchasing securities. These investments resulted in a loss of $15,557,848.[2] Faessel then falsely told Laub that he had become a registered representative with WorldCo and was quali-

---

1. In particular, Faessel told Laub that by affiliating with WorldCo, Laub would have increased access to information and general market advantages, as well as the "latest equipment and technology to see inside and above/below the market".

2. Between July 1, 1995 and March 31, 1996, Laub bought over $600 million in securities in companies such as IBM, Intel, Microsoft, Hewlett–Packard and Texas Instruments.

fied to execute trades for Laub's WorldCo accounts. Faessel encouraged Laub to consolidate several of his accounts at WorldCo and to allow Faessel to clear Laub's trades through a "prime brokerage account" at Spear, Leeds & Kellogg ("SLK") because he said such accounts supposedly offer "priority over retail accounts." Apparently these statements were also false. Laub, ignorant of the deception, agreed to open an account at WorldCo and a prime brokerage account at SLK and on December 8, 1995, he extended Faessel "limited trading authorization" to Faessel on his account.[3] Relying on Faessel's recommendation, Laub bought and sold securities with WorldCo through Faessel which resulted in further losses of $13,988,-362. In May 1996, Laub discovered that Faessel was neither a registered investment advisor nor a registered WorldCo representative and that he had no formal training in analyzing securities. The foregoing, I again observe, are the allegations of the complaint.

Before me is defendants' motion to dismiss the complaint. Defendants move to dismiss Count I under Fed.R.Civ.P. 12(b)(6). A complaint cannot be dismissed under Rule 12(b)(6) unless it " 'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). The court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir. 1996).

In Count I plaintiff alleges a violation of § 10(b) of the Securities Exchange Act of 1934 (the "Act"), 15 U.S.C. § 78j(b), by reason of Faessel's misrepresentations about himself and WorldCo.[4] To sustain a § 10(b) claim, the plaintiff must show that the alleged fraud was committed "in connection with" the sale or purchase of a security. In this Circuit, the "in connection with" requirement is met only if the misrepresentations relate to the intrinsic investment characteristic or investment quality of the purchased security. *See, e.g., Manufacturers Hanover Trust Co. v. Drysdale Securities Corporation,* 801 F.2d 13, 21–22 (2d Cir.1986), *cert. denied,* 479 U.S. 1066, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987). Faessel argues that Count I should be dismissed because the alleged misrepresentations do not meet the "in connection with" requirement since they, as stated, relate to his asserted background and qualifications and not to any aspect of the securities themselves. He also argues that Count I should be dismissed because Laub cannot prove "loss causation", whereby the alleged fraud not only caused Laub to make the purchases but also caused the losses Laub eventually sustained.

In response, Laub argues that defendants' position was already considered and rejected by the Second Circuit in *Marbury Management, Inc. v. Kohn,* 629 F.2d 705 (2d Cir. 1980). In *Marbury,* the Court found that the requisite § 10(b) causation existed where plaintiffs—against their better judgement—invested in "highly speculative" stocks at the urging of an employee of a brokerage firm who represented himself as a fully–licensed broker when he was only a "broker–trainee". Without fully delineating between transaction and loss causation, the Court found that "the expertise implicit in [the brokerage firm trainee's] supposed status over[came] plaintiffs' misgivings prompted by the market behavior of the securities". *Id.* at 708. Defendant Faessel counters, however, that *Marbury* has been narrowed by the Circuit's subsequent decisions in *Bennett v. U.S. Trust Co. of New York,* 770 F.2d 308 (2d Cir.1985) and *Manufacturers Hanover Trust Co. v. Drysdale Securities Corp.,* 801 F.2d 13 (2d Cir.1986).

In answer to both contentions, it is clear from all cases cited, and those the Court's research has disclosed, that the Courts are on a case–by–case basis endeavoring to establish the limits to § 10(b) causation and the

---

**3.** Faessel also gave Tony Bruan limited trading authority on his WorldCo account and relied on Bruan's recommendations but he is not a defendant in this case.

**4.** § 10(b) provides, "It shall be unlawful for any person, directly or indirectly … [t]o use or employ, in connection with the purchase or sale of any security … any manipulative or deceptive device or contrivance …." 15 U.S.C. § 78j(b).

protection the statute affords. It is equally clear, however, under the facts presented here, that wherever that line is eventually drawn, this case does not fall on its actionable side. To hold otherwise would mean that § 10(b) protection would extend to any investor who is given, without more, false credentials of someone claiming to be a broker and subsequently loses money. While a state fraud action may here be warranted, I do not believe there was ever any intention or expectation that this situation would rise to the federal level of actionability.

The federal securities laws are not intended "to provide a broad federal remedy for all fraud." *Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 938 (2d Cir.1984). The Act was enacted to promote "fair dealing and efficiency in the securities markets", *Central Bank of Denver, N.A. v. First Interstate Bank of Denver*, 511 U.S. 164, 188, 114 S.Ct. 1439, 1453, 128 L.Ed.2d 119 (1994), and its purpose "is to protect persons who are deceived in securities transactions—to make sure that buyers of securities get what they think they are getting ... ". *Chemical Bank*, 726 F.2d at 943. As such, the Second Circuit has consistently required that an alleged fraud under § 10(b) pertain to the securities at issue. *See Bissell v. Merrill Lynch & Co., Inc.*, 937 F.Supp. 237, 242 (1996). *Marbury* and *Drysdale* are in accord since the defendants' misrepresentations spoke directly to the quality of the specific security or purchase at issue.

*Drysdale,* on close examination, is a situation where the buy–back capability of the seller was an essential element of the security "package". In finding liability under § 10(b), the Court noted that the defendant's misrepresentations regarding the entity's solvency impacted directly on the quality of the plaintiff's investment because the investment's return was predicated upon the expectation of the entity's ability to repurchase the securities. *Drysdale Securities Corp.*, 801 F.2d at 21. Thus, when the *Drysdale* court analogized *Marbury*, it emphasized that the misrepresentations in both cases went to the investment quality of the specific

stocks at issue because the misrepresentations induced a purchase in the face of investor misgivings regarding that particular stock. *See id.* at 21–22.

■ Laub has not made any allegation that Faessel's misrepresentation caused the loss incurred under any specific stock in Laub's portfolio. He merely alleges that, due to Faessel's deceit, he paid Faessel for fraudulent services from which he may have been induced to purchase as he did. The complaint makes no claim, however, that the asserted losses flow directly and foreseeably from Faessel's misrepresentations, but rather, it appears, from the market forces to which all investors are subject.

Laub invested approximately $600 million in well–established technology stocks such as Hewlett Packard, Intel, IBM, Microsoft, Sun Microsystems and Texas Instruments. For the period from July 1, 1995 through December 7, 1995, the account under which these trades were affected was a non–discretionary one. The plaintiff, himself an experienced and high–stakes investor, controlled what trades were made and when.[5] Thus, nothing suggests that Faessel's alleged fraud led to the risks incurred or losses suffered; the risks appear to have been chosen by Laub and the losses appear to be due to market factors divorced from Faessel's deception.

■ As for the balance of the complaint, Count II alleges a violation of § 10(b) due to Faessel's lack of a reasonable basis for the stock recommendations he made to Laub. Faessel contends that the fraud is not alleged with sufficient particularity as required by Fed.R.Civ.P. Rule 9(b). Allegations of fraud should specify "the time, place, speaker, and content of the alleged misrepresentations." *DiVittorio v. Equidyne Extractive Industries*, 822 F.2d 1242, 1247 (2d Cir.1987). Laub does, however, state the years in which the misrepresentations were allegedly made and he quotes some of the alleged misrepresentations. While concluding that the complaint's allegations meet the particularity threshold required under Rule 9(b), Count II must, however, be dismissed for the same

---

**5.** During that period, Mr. Laub's losses were $15,557,848. On approximately December 8, 1995, Mr. Faessel was given only "limited trading authorization" on Mr. Laub's account, which

lasted until March 31, 1996. During that second period, Mr. Laub's losses rose another $13,988,-362.

reasons as Count I. In the context made, Faessel's misrepresentations as to his background may very well have induced Laub's choice to purchase, but there is nothing alleged indicating those misrepresentations caused the loss actually incurred.

Count III is brought under § 20 of the Exchange Act on the theory that WorldCo should be liable for Faessel's fraud because it controlled him. Faessel argues that if Counts I and II fall then Count III must necessarily fall with them. I agree. Further, all that is alleged by Laub is the conclusory assertion that Worldco was aware of Faessel's misrepresentations and that it exercised actual control over Faessel. There are no facts alleged to support the claim. Count III is dismissed.

Counts IV—VI allege state law claims for fraud, negligent misrepresentation and breach of fiduciary duty. The plaintiff's federal claims having been dismissed, I decline to exercise supplemental jurisdiction over the remaining state claims pursuant to 28 U.S.C. 1367(c)(3).[6]

The complaint is dismissed in its entirety.

So ordered.

6. Section 1367(c)(3) provides that I "may decline to exercise supplemental jurisdiction over a claim... if ... (3) the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. 1367.