**Robert J. FRENCH, et al., Plaintiffs,**

v.

**FIRST UNION SECURITIES, INC., Defendant.**

**Case No. 3:02–0140.**

United States District Court, M.D. Tennessee, Nashville Division.

June 24, 2002.

---

·Harold Naill Falls, Jr., Falls & Veach, P.L.C., Nashville, TN, for Plaintiffs.

H. Rowan Leathers, III, Manier & Herod, Nashville, TN, James A. Murphy, Cameron S. Matheson, Ricardo J. Nunez, LeClair, Ryan, Richmond, VA, for Defendant.

### MEMORANDUM

JOHN T. NIXON, Senior District Judge. ·

Pending before this Court is Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. No. 6) and Motion to Compel Arbitration of Non–Class Claims (Doc. No. 8). Plaintiffs have filed a response to both motions (Doc Nos. 11 and 12), Defendant has replied (Doc. Nos. 23 and 24), and Plaintiffs have now filed sur-replies (Doc. Nos.37, 38). Also pending is Plaintiffs' Motion to Certify Class (Doc. No. 31). The Court held a hearing on Defendant's motions to dismiss and to compel arbitration on June 6, 2002. For the reasons discussed below, the Court will dismiss Plaintiffs' complaint, grant Defendant's Motion to Compel, and deny Plaintiffs' Motion to Certify Class.

## I. BACKGROUND

Plaintiffs, and the class of investors they seek to represent, are former brokerage clients of First Union Securities, Inc. ("FUS"), and of its former employee Francis H. Phillips. (First Amended Complaint, Doc. No. 4, at ¶¶ 5–6). Unknown to Plaintiffs, Mr. Phillips has allegedly had an extensive history of defrauding his clients (*Id.*, at ¶¶ 9–10). Plaintiffs claim that while Mr. Phillips was working for FUS, he used his position to have clients invest in his own venture, a cross dressing/ cowboy night club named "Cowboy LaCage" ("CL"). CL declared bankruptcy in 1997 (*Id.*, at ¶ 15), and Phillips declared personal bankruptcy in January of 1997 (*Id.*, at ¶ 19). Plaintiffs allege that FUS was aware of Mr. Phillips' involvement with CL, and, in fact, made him sign an agreement promising to refrain from having any involvement in CL. (*Id.*, at ¶ 12). However, Plaintiffs claim that Mr. Phillips continued to attempt to raise funds for CL through his position at FUS.

Plaintiffs assert that FUS was aware of Mr. Phillips' conduct, but failed to disclose it to Plaintiffs. Plaintiffs contend that FUS had a duty to disclose these facts, and that if Plaintiffs knew of these facts, they never would have allowed Mr. Phillips to act as their broker. Thus, Plaintiffs, as a class, seek to rescind their transactions with FUS pursuant to Tennessee Common law and the Tennessee Consumer Protection Act (TCPA). Furthermore, individual named Plaintiffs have asserted non-class claims pursuant to Tennessee Securities Act (TSA) and common law theories of fiduciary duty and negligence.

Defendant argues that Plaintiffs' claims fail for four primary reasons. First, the claims are preempted by the Securities Litigation Uniform Standards Act. Second, FUS has no duty to disclose the information Plaintiffs allege was omitted. Third, Plaintiffs have not alleged that the omission caused them any damages. Lastly, Defendant contends that Plaintiff's claims are time barred. Defendant also moves this Court to compel arbitration of Plaintiffs' non-class claims.

## II. LEGAL STANDARDS

### A. *Motion to Dismiss*

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests whether a cognizable claim has been pleaded in the complaint. *See Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988). The standard for reviewing a rule 12(b)(6) dismissal is that the factual allegations in the complaint must be regarded as true, *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir.1995), and "the claim should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983).

### B. *Securities Litigation Uniform Standards Act ("SLUSA")*

Congress passed the SLUSA in 1998 in order to make certain securities cases brought in state courts subject to removal to federal court, and immediate dismissal. Congress passed the SLUSA to clarify that the federal courts are the "exclusive venue for most securities fraud class action[s]" H.R. Conf. Rep. No. 803, 105th Cong., 2d Sess. at 13 (1998). The SLUSA provides:

(1) Class action limitations.

No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—

(A) a misrepresentation or omission of a material fact in connection with

the purchase or sale of a covered security; or

(B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1). Thus, the SLUSA preempts an action: (1) if it is a " 'covered class action'," (2) the claims are based on Tennessee law, (3) Plaintiff's claims concern a "covered security," and (4) Plaintiff alleges untrue, manipulative or deceptive statements or omissions in connection with the sale or purchase of the security." *Hines v. ESC Strategic Funds, Inc., et al.,* No. 3:99–0530, 1999 WL 1705503, U.S. Dist. LEXIS 15790 (M.D.Tenn. September 17, 1999)(Trauger, J.).

Most important to this case is that language requiring that the acts or omissions were "in connection with the purchase or sale of covered securities." 15 U.S.C. § 78bb(f)(1). Under the SLUSA, a "covered security" is one that satisfies that standards specified in 15 U.S.C. § 77r(b), that is a security that is listed or authorized for listing on the New York Stock Exchange, the American Stock Exchange, or the NASDAQ stock market, among others. 15 U.S.C. § 77r(b)(1).

■ Additionally, the alleged acts or omissions must be "in connection with" a covered security. Although the SLUSA does not define the phrase, some courts have relied upon case law interpreting section 10(b) of the Securities Exchange Act of 1934, which uses the same "in connection with" language. *See, e.g., Green v. Ameritrade, Inc.,* 279 F.3d 590, 597 (8th Cir.2002); *Burns v. Prudential Sec.,* 116 F.Supp.2d 917, 923 (N.D.Ohio 2000). *But see Shaw v. Charles Schwab & Co., Inc.,* 128 F.Supp.2d 1270, 1274 (C.D.Cal.2001)(holding that SLUSA's language should not necessarily be given the same definition as the 10(b) language, giv-

en the divergent purposes behind the two statutes). The Supreme Court recently recognized, in the 10(b) context, that the phrase "in connection with" is to be read flexibly in order to effectuate its remedial purposes. *Sec. and Exch. Comm'n v. Zandford,* —— U.S. ——, 122 S.Ct. 1899, 153 L.Ed.2d 1 (2002). In *Zandford,* the plaintiff alleged that his broker engaged in a fraudulent scheme in which he made sales of his customer's securities for his own benefit. The Supreme Court observed that:

> [t]he securities sales and respondent's fraudulent practices were not independent events. This is not a case in which, after a lawful transaction had been consummated, a broker decided to steal the proceeds and did so . . . . Rather, respondent's fraud coincided with the sales themselves . . . . [and] each sale was made to further respondent's fraudulent scheme . . .

*Zandford, supra.* Thus, where a fraudulent scheme involves a simultaneous security transaction and breach of fiduciary duty, the breach is considered to be "in connection with" securities sales. *Id.* However, in order for a breach to be "in connection with" securities sales, the breach of the fiduciary duty must do more than simply implicate securities. Rather, there must be a showing of a nexus between the fraud and a securities transaction. *SEC v. Rana Research, Inc.,* 8 F.3d 1358, 1362 (9th Cir.1993).

### C. Common Law Fiduciary Duty/Duty to Disclose Material Facts

■ In Tennessee, a party is liable for non-disclosure of a material fact only where there is a duty to disclose the facts at issue. *Justice v. Anderson County Tenn.,* 955 S.W.2d 613, 616 (Tenn.App. 1997). The common law imposes a duty to disclose where:

1. [T]here is a previous definite fiduciary relation between the parties.

2. [I]t appears one or each of the parties to the contract expressly reposes a trust and confidence in the other.

3. [T]he contract or transaction is intrinsically fiduciary and calls for perfect good faith.

*Macon Cty. Livestock Mkt. v. Ky. State Bank*, 724 S.W.2d 343, 349 (Tenn.App. 1986) (*quoting Domestic Sewing Mach. Co. v. Jackson*, 83 Tenn. 418, 424–24 (1885)).

■ An agent generally has a fiduciary relationship with his or her principal. The Tennessee Supreme Court has recognized that

An agent is a fiduciary with respect to the matters within the scope of his agency. The very relationship implies that the principal has reposed some trust or confidence in the agent and the agent or employee is bound to the exercise of the utmost good faith, loyalty, and honesty toward his principal or employer.

*Knox–Tenn. Rental Co. v. Jenkins Ins., Inc.*, 755 S.W.2d 33, 36 (Tenn.1988). A stockbroker is generally deemed to be the agent of his or her client. *Galigher v. Jones*, 129 U.S. 193, 9 S.Ct. 335, 32 L.Ed. 658 (1889). Thus, the investor-stockbroker relationship is an inherently fiduciary relationship. *Street*, 886 F.2d at 1481 ("... a stock or commodities broker is the agent of the customer and a fiduciary relationship exists between them."). *See also Youngblood v. Wall*, 815 S.W.2d 512, 516 (Tenn.App.1991)(finding that real estate brokers have a fiduciary duty toward their clients). "As a fiduciary, a broker stands in a special relationship to a client and owes him a duty to use reasonable care and to act in good faith." *Thropp v. Bache Halsey Stuart Shields, Inc.*, 650 F.2d 817 (6th Cir.1981).

■ However, a number of federal courts have held that a stockbroker only has an affirmative fiduciary duty where the broker deals in discretionary accounts. *J.C. Bradford Futures, Inc. v. Dahlonega Mint, Inc.*, 1990 WL 95625, (6th Cir., July 11, 1990). Nevertheless, securities dealers (and their employers) owe a general common law duty of fair dealing to their customers. *Sec. and Exch. Comm'n v. Hasho*, 784 F.Supp. 1059, 1107 (S.D.N.Y. 1992).

## D. Causation and Damages

■ In order to recover for damages, a party must not only prove they have sustained damages, but also that those damages were proximately caused by the acts or omissions of the Defendant. This is true regardless of the nature of the action. To prove common law fraud in Tennessee, "... a party [must] intentionally misrepresent[ ] a material fact or produces a false impression in order to mislead another or to obtain an undue advantage over him ..." *Rose v. Foutch*, 4 Tenn.App. 495, 1926 WL 2135, *3 (1926). *See also Shwab v. Walters*, 147 Tenn. 638, 251 S.W. 42 (1923). Furthermore, in order to recover for fraud, a party must show that the fraud was proximately caused by the acts or omissions of the defrauding party for their damages. The Plaintiff must not only prove the existence of some damages, but also that these acts or omissions caused the defrauded party to sustain damages. The Sixth Circuit has held that in order to find fraud by a broker, a plaintiff must show that the broker "[1] misrepresented a material fact [2] which was intended to induce reliance, [3] that [the investor] reasonably relied on the misrepresentation, and [4] that the reliance was the proximate cause of his damages." *Street*, 886 F.2d at 1484–85 (*citing First Nat'l Monetary Corp. v. Weinberger*, 819 F.2d 1334, 1340 (6th Cir. 1987)). *See also Sanders v. First Nat.*

*Bank in Great Bend*, 114 B.R. 507, 516 (M.D.Tenn., 1990)(Wiseman, J.).

### E. Statute of Limitations ·

In order to bring an action under Tennessee law, a plaintiff must adhere to the relevant statutes of limitation.

The statute of limitation for common law fraud is three years. Tenn.Code. Ann. § 28–3–105.

■ The Statute of repose for violation of the Tennessee Consumer Protection Act is "one year from a person's discovery of the unlawful act or practice, but in no even shall an action ... be brought more than four years after the date of the consumer transaction giving rise to the claim for relief." Tenn.Code. Ann. § 47–18–110. The statute of repose for violation of the Tennessee Securities Act is two years. Tenn.Code. Ann. § 48–2–122(h). Both statutes of repose may be tolled by a showing of fraudulent concealment, and the toll continues until the reasonably diligent plaintiff discovers the fraud. *Fahrner v. S.W. Mfg., Inc.*, 48 S.W.3d 141, 145 (Tenn.2001).

Lastly, the statute of limitations for a breach of fiduciary duty is three years, Tenn.Code. Ann. § 28–3–105, and the statute of limitations for commercial negligence is three years.

### F. Arbitration of Non–Class Claims

■ Agreements to arbitrate disputes are generally favored. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The Supreme Court has recently held that contractual agreements to arbitrate disputes are almost universally enforceable under the Federal Arbitration Act, 9 U.S.C. §§ 1, *et. seq.* ("FAA"), *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). The Sixth Circuit has consistently held that pre-dispute mandatory arbitra-

tion agreements are valid. *Haskins v. Prudential Ins. Co. of Am.*, 230 F.3d 231, 239 (6th Cir.2000); *Willis v. Dean Witter Reynolds, Inc.* 948 F.2d 305, 310 (6th Cir. 1991).

■ However, although the Supreme Court and lower courts endorse the use of arbitration, courts continue to emphasize that an arbitration agreement cannot force a party to forfeit any "substantive rights." *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)(no waiver of substantive rights in the employment discrimination context). Thus, "... even if arbitration is generally a suitable forum for resolving a particular statutory claim, the specific arbitral forum provided under an arbitration agreement must nevertheless allow for the effective vindication of that claim." *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306 (6th Cir.2000).

■ Additionally, since arbitration agreements are creatures of contract, a party cannot be required to submit to arbitration unless he or she has agreed to do so. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). *See also Cooper v. M.R.M. Invest.*, 199 F.Supp.2d 771 (M.D.Tenn. 2002) (Nixon, J.).

In the securities arena, agreements to arbitrate are governed by NASD rules, as set forth by the Securities and Exchange Commission ("S.E.C."). 57 Fed.Reg. 52659. NASD Code of Arbitration Procedure rule 10301(d) and NASD Rule 3110(f) set the guidelines for the arbitration of securities claims. The S.E.C initially promulgated the rules against arbitration of class action claims in 1992, finding that since the judicial system had procedures in place to manage class action claims, those claims were better handled by the courts. 57 Fed.Reg. 52659.

Rule 10301(d) provides that a firm may not move to compel arbitration against a customer "who had initiated in court a putative class action or is a member of a putative or certified class with respect to any claims encompassed by the class action." To this Court's knowledge, no court has determined whether this language refers to all claims that a party has, including non-class claims, or solely the party's class action claims.

## III. DISCUSSION

### A. *CLASS ACTION CLAIMS–MOTION TO DISMISS*

#### 1. *Plaintiffs' Claims are Not Preempted by* the SLUSA

The Defendant correctly notes that this action involves a covered class action, based on state law, alleging a misrepresentation or omission of a material fact. However, this Court does not believe that this action is "in connection with the purchase or sale of a covered security." [1]

 As discussed above, in order for an action to be deemed "in connection with" a purchase or sale of a covered security, there must be some nexus between the alleged fraud and a securities transaction. *Rana, supra.* Although *Zandford* espoused an expansive reading of the "in connection with" language, there still must be a connection between the action and some sort of securities transaction. Where, as here, the plaintiff's claims relate to a broker's inherent fitness to execute trades and make investment decisions on behalf of their client, a fraud action is not "in connection with" the purchase or sale of a covered security. The Second Circuit Court has held that misrepresentations or omissions "involved in a securities transaction but not pertaining to the securities themselves" could not form the basis of a § 10(b) violation. *Chemical Bank v. Arthur Andersen & Co.,* 726 F.2d 930, 943 (2d Cir.1984), (Friendly, J.). Following *Chemical Bank,* a court held that promises of "conservative stewardship" are not sufficiently "in connection with" the purchase or sale of covered securities. *Siegel v. Tucker, Anthony & R.L. Day, Inc.,* 658 F.Supp. 550, 553 (S.D.N.Y.1987).

Therefore, if a broker's positive misrepresentations, such as promises of "conservative stewardship," are deemed to fall outside of the "in connection with" language, then the broker's omission of relevant facts may also not be "in connection with" the purchase or sale of covered securities. Indeed, if a broker's positive statements, made to preserve the broker-client relationship, are not considered "in connection with" the purchase or sale of securities, *Siegel,* then that same broker's failure to disclose information for the same purpose should also be considered outside of the "in connection with" language. For example, if Broker Smith makes a statement regarding his qualifications or investment strategy, Courts have held that there is no "connection with" the purchase or sale of covered securities. *See e.g., Siegel,* 658 F.Supp. 550 at 553. Thus, if Broker Smith *fails to make* certain statements regarding his qualifications or investment strategy, as the Plaintiffs allege in this case, the claims should likewise be deemed outside of the "in connection with" language. *See Laub v. Faessel,* 981 F.Supp. 870 (S.D.N.Y.1997)(where defendant, a dentist, failed to disclose his lack of qualification, suit brought against him was not within Rule 10(b)'s 'in connection with' language.)

 Therefore, this Court now holds that an omission that relates to an inves-

---

1. The "class action" issue is dealt with below. However, at this point in the analysis the Court will assume that there is a class action and analyze whether this is action is "in connection with the purchase or sale of a covered security."

tor's choice of a broker may not be "in connection with" the purchase or sale of covered securities. This analysis is to be undertaken on a case-by-case basis, and if an alleged omission relates to the selection of a broker, an action brought under state law will not be preempted by the SLUSA due to a "connection with the purchase or sale of covered securities."

■ Here, First Union's omissions related to Mr. Phillips' qualifications, not his actual investment decisions. Therefore, the claims brought by the Plaintiffs are not preempted by the SLUSA's "in connection with" language, and will not be dismissed on the basis of preemption. Therefore, the Court must next consider the substance of Plaintiff's claims.

### 2. Defendant Owed Plaintiffs a Fiduciary Duty/Duty to Disclose Publicly Available Information.

■ Defendant claims that First Union had no duty to disclose facts known to it because a broker has no duty to disclose where the broker and client are involved in a non-discretionary relationship. (Doc. No. 6, p. 8). However, the broker's duties are not limited to the duties identified by federal securities cases. Above all, the broker is an agent of his or her client. As such, the broker has a duty of fair dealing, *inter alia. Thropp,* 650 F.2d 817. Therefore, although Mr. Phillips may have only had non-discretionary control over his clients' trades, he and FUS also had a general duty of fair dealing. A broker or brokerage house cannot disclaim responsibility for a client, any more than an attorney may simply disavow any responsibility for keeping their clients aware of circumstances that might directly impact their case. Additionally, a broker or attorney cannot avoid liability for miscon-

duct by stating that a certain regulatory code did not require them to do something. Common law duties should permeate an agent's dealings with his or her clients, regardless of the existence of a regulatory scheme.

By choosing to conduct business in Tennessee, FUS has accepted Tennessee common law, and this Court cannot completely ignore common law agency law, which militates in favor of a finding that FUS owed Plaintiffs a generalized duty of fair dealing.

Defendant also claims that FUS's duty is already spelled out by federal regulations [2], and because federal regulations require Defendant to make relevant information available to the general public, Defendant did not have an independent duty to disclose any further information to the Plaintiffs. Defendant opines that the information Plaintiffs now request was publicly available. Furthermore, Defendant asserts that requiring them to comply with a generalized common law duty would subvert the purpose of NASD rules, which makes certain information about a broker publicly available. Specifically, the Central Registration Depository ("CRD") makes certain information available to the public via telephone and internet. Defendant contends that the information Plaintiffs allege was not disclosed to them is available through the CRD, and therefore FUS had no duty to disclose that information.

■ The Court does not agree that the federal regulatory scheme preempts any state and common-law duties. While it is true that a federal statute or regulation may preempt a state law that stands as an obstacle to the federal law or regulation,

**2.** See 15 U.S.C. § 780–3(i)(requiring securities organizations to make information publicly available). The NASD is a self-regulatory organization, but its rules must be approved by the SEC.

*see Millsaps v. Thompson,* 259 F.3d 535, 548 (6th Cir.2001), that rule is inapplicable in this case, as discussed below.

State laws may be preempted by federal laws in a variety of ways. First, Congress may expressly preempt a state law. *Hillsborough County, Fla. v. Automated Med. Lab., Inc.,* 471 U.S. 707, 713, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985). This Court has found nothing indicating that Congress intended to preempt state-law duties by establishing a federal registry. Second, where Congress or an agency has enacted a comprehensive scheme that leaves no room for state regulation, the federal action is deemed to have preempted the field. *Id.* The scheme in question here simply spells out the federal requirements for disclosure, and there is no implied preemption of any state law duties. *See* 15 U.S.C. § 78bb(a) (In promulgating the SEC act, Congress expressly indicated that it did not intend to preempt state laws or regulations unless there was a direct conflict). Third, a federal law or regulation may preempt a state law where there is a direct conflict between the two. *Id.* Again, there is no direct conflict in this situation. State and common-law duties and requirements do not directly conflict with the scheme implementing the CRD. Thus, this Court finds that although Congress created the SEC, which in turn gave birth to the NASD, which set up the CRD, states continue to have control over brokers and securities agents. State-law and common-law duties and requirements continue to govern the behavior of brokers and securities agents and their firms. Therefore, the existence of the CRD does not imply that state law and common law requirements and rights have withered away. Rather, the CRD represents the minimum duties that the federal government requires—a floor, rather than a ceiling. Contrary to the Defendant's claims, the duties that Plaintiffs seek to impose upon brokerage firms are not newly-discovered. In fact, these duties have always loosely bound the behavior of broker-agents, predating the advent of the CRD by many years.[3]

FUS's common law duty may have necessitated a disclosure of the information that Plaintiffs allege as a gravamen of their fraud and consumer protection claims. At this point it is sufficient to state that Plaintiffs have stated facts that may ultimately entitle them to relief.[4] However, the Court must still discuss the other issues identified by the Defendant before concluding that this action should not be dismissed.

### 3. Plaintiffs have not Shown Proximate Causation or Damages

Having found a possible duty and a possible breach[5], the Court must next determine whether Plaintiffs' complaint

3. Defendant argued at oral argument that the imposition of duties outside of the CRD system would create a substantial hardship for corporations such as FUS. However, the Court is not persuaded by this argument. While FUS might find it necessary to hire and train employees to enable them to assure compliance with federal regulations, FUS's legal staff must always be mindful of state and common law duties. A knowledge of common law duties should permeate the inner-workings of FUS and other similar corporations.

4. The Court will leave a further discussion of a broker's state law duties for another day. At this point, it is sufficient to state that the CRD represents a floor, not a ceiling, and state law and common law requirements may sometimes require more than CRD disclosure. However, the Court need not discuss this issue at length, as its resolution is not necessary for the resolution of this case.

5. In other words, having declined to dismiss this case based on the lack of a duty, the Court will proceed to discuss causation and damages.

properly alleges causation and damages. Plaintiffs allege that but for Defendant's omissions, they would never have entrusted their money to FUS and Francis Phillips, and would not have lost money in the accounts that they established with FUS. (Doc. No. 11, p. 11). Plaintiffs cite to *Wood v. Newman, Hayes, & Dixon Ins. Agency,* 905 S.W.2d 559 (Tenn.1995) for the proposition that where a party is not notified of the content of an insurance policy, the party may file a claim against their insurance agent for failure to disclose certain relevant information. Specifically, Plaintiffs cite language indicating that the court should not speculate about what would have happened if the broker disclosed all of the relevant information to the client *Id.,* 905 S.W.2d at 564–65.

Defendant argued in their filings, and reiterated at oral argument, that Plaintiffs are not entitled to recover unless they allege a harm that was caused by the Defendant's actions or omissions. Defendant analogizes to the medical malpractice arena, where a patient suing a doctor for lack of informed consent must still prove that she was damaged by doctor's procedures. (Doc. No. 23, p. 10). In other words, no matter what legal theory Plaintiffs rely upon, there still must be a showing of a loss that was caused by Defendant's acts or omissions.

The Court agrees that Plaintiffs must prove that they sustained a loss that was proximately caused by Defendant's acts or omissions. Although Plaintiffs' claims are novel, the Court will rely upon common law torts cases [6] in order to determine whether Plaintiffs have stated a claim upon which relief may be granted. For the reasons discussed below, the Court

finds that the Plaintiffs have not met their burden.

Plaintiffs' reliance upon *Wood* is misplaced. In that case, the Tennessee Supreme Court found that an insurance broker's failure to inform his client of a change in their insurance policy was the proximate cause of Plaintiffs' losses because this deprived them of the ability to explore other methods of insuring their property. However, the plaintiffs in *Wood* actually allege damages sustained as a result of the Defendant's omissions—that an ice storm caused damage to plaintiff's docks, and this damage was not covered by plaintiff's renewed insurance policy. Thus, the fact that Wood accepted an insurance contract that did not cover the ice storm, their agent's omission was a but-for cause of their injury. By contrast, the current Plaintiffs do not specifically allege that their losses were attributable to FUS's acts or omissions. While Plaintiffs may claim that "it would be futile" for this Court to speculate about how Plaintiffs would have proceeded had they attained the requisite knowledge, this Court will also not concoct damages where none are specifically alleged. Second, the Court finds that there is a difference between an allegation of a failure to inform a principal of a material change in a contract, as in *Wood,* and the failure to inform a principal of information relating to the broker himself, as here. Had *Wood* involved omissions relating to the background of Sarah Woods' broker, Gregory Slusher, that case would be more helpful to this Court.

While Plaintiffs' analogy is somewhat helpful, the Court finds Defendant's analogy to medical malpractice more helpful in

---

**6.** Plaintiffs' novel use of common law torts principles does not change the fact that in order to recover, Plaintiffs must show a duty, breach of that duty (as discussed above), causation and damages. If Plaintiffs cannot show that they (1) sustained damages and (2) that those damages were caused, both legally and proximately, by the Defendant's actions, then they may not recover under a common law tort theory.

this case. Defendant points the Court to informed consent cases, where courts have long held that in order to recover damages for a lack of informed consent, a party must both prove that they would have chosen a different path of treatment had they been fully informed. *See* Tenn.Code. Ann. § 29–26–115. *See e.g., Mitchell v. Kayem,* 54 S.W.3d 775, 780 (Tenn.App., 2001). That is, the party must show that they were treated in a way that differed from what they consented to, and must show that they have been exposed to "harm" as a result. In other words, this cause requires a showing of being treated in a way that they would not have consented to had they known all of the facts. The Court finds this analogy only minimally helpful because, after all, Plaintiffs *are* alleging that had they known all of the fact (their broker's history), they would not have consented to allowing Mr. Phillips and FUS to handle their securities account. However, Plaintiffs' allegations have to do with the character of their agent, not with the character of the treatment they received.

 The Court finds more informative two other areas of medical malpractice cases: medical battery claims, and negligent non-disclosure and negligent infliction of emotional distress cases. First, in order to make out a battery claim against a doctor, the patient must show that she was touched in a way that was of a substantially different nature from that to which she consented. *See e.g., Mohr v. Williams,* 104 N.W. 12 (Minn.1905)(consent to surgery on right ear did not authorize doctor to operate on left ear, and therefore surgery constituted battery). In the same way, in order to make out a claim against FUS, Plaintiffs must show that they were treated in a way that was substantially different than that to which they consented. Unfortunately, Plaintiffs' amended complaint is devoid of such a showing. There is no discussion of whether Plaintiffs

were "treated" (by their broker-agent) in a way that was substantially different from what they contracted for. It is the nature of the treatment, not the character of the agent that is implicated by this line of cases. In other words if the doctor in *Mohr* had a characteristic that may have been objectionable to the patient had she known that information, Mohr would not have had a cause of action. The cause of action in *Mohr* was premised on a lack of consent to a course of treatment, not the characteristics of the treating party. Thus, a generalized claim that a plaintiff has suffered unspecified and unclear damages is insufficient.

Second, the Court is informed by the line of cases in which courts have held that an unsubstantiated risk does not automatically amount to a showing of harm or damages. *See Carroll v. Sisters of St. Francis Health Serv., Inc.,* 868 S.W.2d 585 (Tenn.1993)(in order to make out a claim for exposure to AIDS, a party must show that needles were actually contaminated with AIDS); *K.A.C. v. Benson,* 527 N.W.2d 553, 561–62(bare risk of unmaterialized HIV infection to plaintiff treated by HIV+ is not actionable).

 Taken together, these medical malpractice cases stand for the proposition that a party making a claim against their trusted agent must still show that they have suffered some damages, and that those damages were proximately and legally caused by that agent. Much in that same way that a person cannot sue their H.I.V positive doctor (or her employer) without showing that they have been injured solely by the doctor's status, Plaintiffs here cannot make out a claim against FUS without showing that their omissions resulted in an injury.

 Furthermore, Plaintiffs have failed to show that any (hypothetical) damages were proximately caused by the Defendant's action. Plaintiffs claim that

"[b]ut for defendant's failure to provide the material information in its possession ... plaintiffs would never have done business with him and would not have suffered the losses in their accounts for which they seek redress." (Doc. No. 37, p. 14). While it is true that Plaintiffs may not have chosen Mr. Phillips as their broker, the Court is unable to conclude that "but for" FUS's omissions, Plaintiffs would not have suffered losses in their accounts. Unfortunately, neither the Court, the Plaintiffs, nor the Defendant can definitively determine what would have happened had Plaintiffs known about Mr. Phillips' past dealings. Whereas the *Wood* court was faced with an insurance contract that did not cover a certain occurrence, an occurrence that actually took place, this Court is faced with the Plaintiffs' lack of information about the character of their agent, which may or may not have resulted in their losses. Thus, while this Court refuses to speculate about what the Plaintiffs would have done had they been notified of Mr. Phillips' past[7], the Court believes that this fact cuts against a finding that FUS's omissions were the proximate cause of Plaintiffs' alleged damages.[8]

The Court has not come to this conclusion lightly, but under the common law of Tennessee (and every other state), Plaintiffs must clearly prove both damages and causation in order to recover in tort. Plaintiffs may very well have sustained losses, but the common law simply does not allow

this Court to reward them where they cannot actually show that they have been hurt by FUS's omissions.

For the reasons discussed above, Plaintiffs' class-action claims will be dismissed. First, Plaintiff cannot make out a claim for common law fraud without proof of damages and causation. Second, Plaintiffs cannot make out a claim under the TCPA absent a showing of both damages[9] and causation[10]

## B. ARBITRATION OF NON–CLASS CLAIMS

■ While Defendant submits that NASD rules only forbid the arbitration of class action claims, Plaintiffs argue that a brokerage firm may not move to compel arbitration against any customer that has initiated a putative class action. Therefore, this issue essentially boils down to a matter of statutory construction and intent: do the NASD rules forbid the arbitration of any claims that a class action plaintiff has against a brokerage house, or do the rules only ban the arbitration of that customer's class action claims?

This issue appears to be a matter of first impression[11], and both parties have fully briefed and argued this issue to this Court. The Court had already determined the necessity of dismissing Plaintiffs' class action claims. Therefore, should the Court find that arbitration is not proper, this case will proceed before this Court on Plaintiffs' non-class claims. However,

---

7. As the both parties insinuate, such speculation would be nearly impossible, if not futile.

8. As discussed, Plaintiffs have not alleged specific damages. Thus, it is not necessary to find that those damages were proximately caused by FUS's actions.

9. *See K.A.C.*, 527 N.W.2d at 562 (without a showing of injury, plaintiff has now basis for recovery under Minnesota Consumer Fraud Act). The Minnesota act is similar to the Tennessee Consumer Protection Act.

10. Therefore, it is not necessary to address Defendant's statute of limitations arguments.

11. The parties informed the Court at oral argument that they believed this is a case of first impression. The Court has found no explicit discussion of this issue, and agrees that this would be the first Court to specifically address this issue.

should the court find that the non-class claims must be arbitrated, the court will have no further jurisdiction over this action.

This Court has recognized that pre-dispute mandatory arbitration agreements are not automatically valid. *See Cooper* (invalidating a mandatory arbitration agreement in the employment discrimination context). However, this case involves a vastly different factual and legal scenario, and the Court must consider whether, on balance, requiring Plaintiffs to arbitrate their claims will result in a denial of their substantive rights. *Gilmer.* The Court finds that few of the concerns present in the employment arbitration area, as discussed in *Cooper,* are implicated by the facts in this case.[12] Given the current state of the law, the Court finds that the arbitration agreements in this case are not void based solely on public policy reasons.

While each named Plaintiff's contract contains a pre-dispute arbitration clause (Doc. No. 8, Exh. 1–12), the contracts also include language barring the arbitration of class action claims. Thus, this Court must parse and construe the contract language in the Plaintiffs' arbitration agreements to determine whether that language bars the arbitration of Plaintiffs' claims. Each of the Plaintiffs' contracts included the following language:

> No person shall bring a putative or certified class action to arbitration or seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative

class action who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is decertified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent state herein.

(Motion to Compel Arbitration of Non–Class Claims, Doc. No. 8, Exh. 4). This language certainly bars the arbitration of class-action claims, and is based on language used by the NASD Code of Arbitration Procedure Rule 10301(d)(1) and New York Stock Exchange Rule 600(d)(1).

The issue here is whether a party having both class action and non-class action claims may compel arbitration of the non-class action claims. This is a difficult issue which, thankfully, this Court need not fully resolve. Having dismissed Plaintiffs' class action claim under Fed.R.Civ.P. 12(b)(6), the Court has no further jurisdiction over those claims. Thus, although Plaintiff "initiated" putative class action claims, those claims are no longer alive, and it would be anomalous for this Court to hold that Defendant is barred from compelling arbitration of non-class claims, simply because Plaintiff initiated a class action. Although the Court need not fully parse the contractual language cited above, the Court notes that the arbitration bar lasts only last so long as there is a class action. Once a class-action claim is dismissed, it is no longer a roadblock to the arbitration of non-class claims.[13] Any

---

**12.** Additionally, Plaintiffs have not brought any of these factors to this Court's attention.

**13.** Therefore the Court has found it necessary to construe a portion of the NASD language. In establishing a rule limiting the arbitration of claims brought as putative class action claims, the drafters could not have intended

for claims brought by that putative class to bar arbitration once those "class action claims" claims have been dismissed. In other words, whatever the NASD language requires, it certainly does not require a court to allow a putative class's dismissed claims to reach out from the grave and bar the arbitration of any remaining non-class claims.

834

other construction of this rule would allow a plaintiff to append a questionable putative class action claim to other claims in order to avoid the specter of arbitration.[14] Clearly, this is not what the NASD and the SEC intended when those organizations made the changes to the NASD Code of Arbitration Procedure in 1992. In fact, the SEC specifically noted that since "the judicial system has already developed procedures to manage class action claims [,][e]ntertaining those claims through arbitrations ... would be difficult, duplicative and wasteful." 57 Fed.Reg. 52659. However, if the Court has already dismissed the class action claims, this rationale no longer applies.

▆ Nevertheless, the Plaintiffs now argue that they should not be bound by the arbitration agreements because the agreements have been fraudulently induced by the Defendant. Plaintiffs note that their contracts with the Defendant indicate the Virginia law shall govern any arbitration conducted under the arbitration agreement, and argue that Virginia law governs the issue of arbitrability. Defendant responds that Virginia law was intended to govern the arbitration proceedings, not bind this Court. Furthermore, Defendant urges this Court to find that fraud in the inducement must be decided by the arbitrators, not the Court, citing *Prima Paint Corp. v. Flood and Conklin Mfg. Co.*, 388 U.S. 395, 407, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). Under *Prima Paint*, a court, rather than an arbitrator, may adjudicate a claim of fraud in the inducement only if the claim of fraud concerns the inducement of the arbitration clause itself, not the inducement of the

contract generally. *Prima Paint*, 388 U.S. at 403–04. However, "[i]f the arbitration clause is not at issue, then the arbitrator will decide challenges to the contract containing the arbitration clause." *C.B.S. Employees Fed. Credit Union v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 912 F.2d 1563, 1567 (6th Cir.1990).

Here, Plaintiffs allege that the contractual relationship between themselves and FUS was induced by fraud. Plaintiffs allege that the arbitration agreements were procured *"through* defendant's fraudulent inducement."* (Doc. No. 12, p. 4)(emphasis added). Although this Court questions the distinction between fraud in the inducement of the arbitration clause and the entire contract, this Court is bound by Supreme Court precedent, and as the Supreme Court recognized in *Prima Paint*, the issue of fraud related to the entire contract is severable from issues related to the arbitration clause itself. Accordingly, it is for the arbitrator, not this court, to decide the issue of fraud in the inducement. Therefore, the Court will order that Plaintiffs' non-class claims shall be subject to arbitration.

## C. MOTION TO CERTIFY CLASS

▆ In light of the above dismissal of Plaintiffs' class claims, the Court does not deem it necessary to proceed with Plaintiffs' Motion to Certify the Class. The Court has already construed Plaintiffs' claims in the best light possible, and has limited its interpretation to the pleadings. Therefore, dismissal pursuant to Rule 12(b)(6) precludes the certification of a class in this instance.

**14.** The Court does not mean to imply the that Plaintiffs' "class action claims" in this instance were in any way spurious. However, as the Defendant observed at oral argument, future plaintiffs may seek to append questionable "class action claims" to their complaint in securities cases, solely for the purpose of avoiding arbitration. The NASD rules were intended to allow for a proper and swift resolution of class action claims, not to create an incentive for the creation of questionable claims, cloaked as class action claims.

The Supreme Court held in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), that it is inappropriate to make a preliminary assessment of the merits of case in order to determine whether the action should be certified as a class action. However, as the Second Circuit recognized, *Eisen* does not stand for the proposition that class certification must be addressed prior to a motion to dismiss. *Schweizer v. Trans Union Corp.*, 136 F.3d 233, 238 (2d Cir.1998)(holding that nothing in Rule 23 precludes a court from examining the merits of a plaintiff's claims on the basis of a Rule 12 or Rule 56 motion prior to resolving the issue of class certification). Similarly the Sixth Circuit has upheld the pre-class certification dismissal of a claim in a securities case. *In Re: Comshare, Inc. Sec. Litig.*, 183 F.3d 542 (6th Cir.1999) *aff'g*, No. 96–73711–DT, 1997 WL 1091468 (E.D.Mich. Sept. 18, 1997). *See also Bush v. Rewald*, 619 F.Supp. 585, 590 (D.Hawai'i 1985).

This Court notes that decisions limiting a Court's ability to dismiss a case prior to a certifying a class, are premised on the concept that the Defendant should not be held to be accountable to an unknown class of individuals. However, if the Defendant voluntarily brings a motion to dismiss a complaint, this concern is not implicated. *See Ahne v. Allis–Chalmers Corp.*, 102 F.R.D. 147, 150 (E.D.Wis.1984). Defendant does not seek a preliminary assessment of their liability in order to determine whether a class action is proper, as was the case in *Eisen*. Rather, the Defendant moves for this Court's final determination of Plaintiffs' ability to state a claim upon which the Court may ultimately grant relief. The Court has found it appropriate to dismiss all of Plaintiffs' "class" claims. Therefore, the Court does not deem it necessary to address Plaintiffs' Motion to Certify the Class. *See In Re Comshare.*

## IV. CONCLUSION

In light of the above discussion, and pursuant to the contemporaneously-entered Order, the Court will GRANT Defendant's Motions to Dismiss and to Compel Arbitration and DENY Plaintiffs' Motion to Certify Class.

### *ORDER*

For the reasons discussed in the contemporaneously entered memorandum, and accepting all of Plaintiffs' allegations as true, the Court hereby dismisses Plaintiffs' first amended complaint for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Therefore, the Court hereby GRANTS Defendant's Motion to Dismiss (Doc. No. 6). Furthermore, the Court hereby GRANTS Defendant's Motion to compel arbitration of Plaintiffs' non-class claims (Doc. No. 8). Thus, the Court does not deem it necessary to address Plaintiffs' Motion to Certify Class (Doc. No. 31), and that Motion is DENIED as moot. Accordingly, Plaintiffs' complaint is dismissed in its entirety.

It is so ORDERED.